Baldwin, J.
This is an awkward and obscure devise, but it has a key to it, which I think will unlock the testator’s meaning. That key is to be found in the condition of this daughter, and the provision which a father would be naturally disposed to make for a child in her circumstances. She was the wife of an improvident husband, and the mother of a large, and, it may have been, increasing family of children; some of them of tender years ; and of two who had attained maturity, one was a married daughter, and the other a son who had set out in life and was managing for himself. The testator, in making a final distribution of his property amongst his children, would of course be desirous of placing the share intended for this unfortunate daughter, beyond the control of her thriftless husband, and the grasp of his creditors ; and to secure the benefits of the property to her and those who were the nearest objects of her solicitude, and who by that reason chiefly had attracted his own affectionate regard. The anxious father’s wish would therefore be to give the daughter the control, discretion and authority, which should pertain to the only efficient head of the family; so restricted merely as to prevent her dominion over the subject from being injuriously perverted. Such a purpose would require a scheme giving to her a home and the perception of the little income of her humble estate, for the common maintenance of herself and family, with the chance of appropriating any surplus that industry and frugality might yield, towards the advancement of such of her offspring as had left, or might leave, the house *441 hold shelter; a scheme that would authorize her, for those objects, to continue her ownership and enjoyment within the limit of her life, or to surrender either or both, at her discretion, to and for the benefit of those entitled to the succession ; a scheme that would thus retard or accelerate the admission of her heirs respectively into their inheritance, according to the wants and interests of the family.
With this view of the testator’s probable motives, arising out of the triple relation of the prominent devisee of daughter, wife and mother, and in connexion with the scantiness of the provision contemplated, we shall find that the devise is reasonable and judicious in the whole, with a perfect unison and harmony in all its parts : whereas a different consideration of the subject must result inevitably in a harsh and grating discord. Let us look for a moment into the particulars of the clause in question.
In the first place, the testator shews that this daughter is the primary object of his contemplated bounty, by giving the property to her and her heirs, w'ith the designation, it is true, of one of those heirs, (who, it would seem, was a favourite grandson,) lest it might be supposed that he was excluded from the inheritance, by a separate devise of a tract of land to him in a preceding part of the will. He then proceeds to exclude all marital rights and control of the husband, by declaring that he shall have nothing to do with the management of the property, because incapable of conducting his own affairs. He next interposes his executor as trustee, but without investing him with the title, inasmuch as he was merely to be the protector of the separate estate, without actual possession of the property, or pernancy of the profits. Then follows a declaration that the profit is to be to the daughter and her children, evidencing that she is to have the income and her heirs a present interest in the subject, but qualified immedi *442 ately afterwards by a provision that it shall not be sold by them or any of them (meaning the heirs or children) until the youngest child comes to the age of 21 years, and not then without the consent of their mother, if still bving. This provision manifests that the mother was to take the profits for the common benefit of the family, without diminution by subtractions from the principal, so long as the whole income might be requisite for the support of the younger children, or afterwards during her life, if she should deem the whole necessary for her own maintenance. We can account rationally in no other way for the acceleration first of the interest of the heirs, and then its restriction, at the discretion of their mother. Why should the adult and married children be prevented from alienating during the minority of the others, and subsequently at the will of the mother during her life, but to secure her maintenance-and that of the household ? And why tqo should they not be permitted to alienate, if it should be found to advance their interests, without prejudicing the common interests of the family; and who so proper to be the judge of this as the mother and mistress of the domestic establishment ?
On the other hand, why should we imply, for it is not expressed in the will, an immediate devise of the little estate, real and personal (it embracing a slave by a subsequent clause) to the mother and her children, adults and infants, married and unmarried, born and unborn, as joint tenants or tenants in common, with the distribution amongst them individually and equally of what was a bare modicum of income for common sustenance ? Look at the consequences, and see how it defeats the whole paternal scheme for shelter and food and raiment, and domestic happiness. What becomes of the mater-* nal control and authority; of a discretion adapted to the wants and inclinations of the children ; of a frugal but comfortable household management and thrift; of the domestic hearth itself? And how is the trustee to *443 conduct the complex machine, without personal attention to its minutest details ; or to save himself from responsibility without taking actual possession of the subject, and doling out thepeculium of each individual, including the pittance of some 20 dollars per annum to the mother of the family ? In the very nature of things, a device so absurd, impracticable and mischievous could never have entered a father’s heart.
A construction fraught with such evils, defeating the main object which the testator had in view, and mocking the wretchedness which he sought to relieve, can gain no countenance except from a merely technical view of the question, derived from the rigidness of common law conveyances, and inapplicable to the last wills and testaments of ignorant testators, whose intention, the great desideratum, is to be attained by moulding with a plastic hand their rude and imperfect language into a conformity with their natural and common sense thought. The intention, fairly and candidly sought and sufficiently ascertained, overrules every thing else, and becomes the law of the will, unless in contravention of the law of the land. “ If,” said lord Mansfield in Chapman v. Brown, 3 Burr. 1634. “ words are supplied by construction, it must always be in support of the manifest intent. The blunder of expression is here favourable to the real meaning, and therefore cannot be supplied by construction, the constant object of which is to attain the intent. For this purpose, words of limitation shall operate as words of purchase; implications shall supply verbal omissions; the letter shall give way; every inaccuracy of grammar, every impropriety of terms shall be corrected by the general meaning, if that be manifest.”
This view of the case is, 1 think, strongly sustained by the decision of the court, and the reasoning of judge Carr, adopted by the majority of the judges, in the case of Wallace & wife v. Dold's ex'ors & al. 3 Leigh 258. *444 In that case there was a bequest of slaves and money to trustees, with adirection that the profits of the slaves and the interest of the money should be applied to the support and maintenance of a married daughter of the testator, and her child ; and that on the death of bis daughter, the slaves should be given to her child or children, if she should have more tbanorie : and it was held that the testator’s daughter was entitled to the whole profits during her life, and the daughter’s child had no right to demand a share of them for her support and maintenance. There were other circumstances relied on, but the opinion of the court was based, in a great measure, upon the probable motives and design of the testator, the wants of the daughter, and the nature and purpose of the bequest. It was a much stronger case than this; and though judge Tucker dissented from the rest of the court, some of his remarks in reference to provisions for the maintenance of families, seem to indicate that his conclusion would most probably have been different in a case like this.
I think the decree ought to be reversed, and the bill dismissed with costs.
Allen, J.
In the construction of this will, the situation of the parties must be looked to for the purpose of ascertaining the probable intent of the testator. He had three children, for whom it was his intention to provide, and who are the principal objects of his bounty. To his two sons he gives portions simply and directly. But his daughter was peculiarly situated. From the face of the will it appears that she was married to an improvident husband. He states that his son in law was not capable of managing his own affairs, and therefore he excludes him from managing any part of his estate. This daughter had eight children, two of whom had left the paternal roof; and for these, the testator makes a special provision. The remaining children *445 lived with the mother, and some of them were of tender years. In this state of the family, it seems to me, the daughter was the principal object of the testator’s bounty. Having provided for such of her children as had left her, his intention was to secure to her a comfortable provision for life ; to place her in a condition in which she should be certain to receive the profits of this small estate, the whole of which was not more than sufficient for her maintenance in the decline of life. The first clause gives the property to her and her heirs, the grandson included ; the testator apprehending perhaps, that if he were not specially named as one of the heirs, a doubt might arise whether, as he had previously given him a tract of land, he would not be excluded. These words would have given the daughter the fee. Subsequent qualifications of the devise prove that he did not use the word in a technical meaning, and that he intended by it the children. They are important, however, as indicating an intention that all the children of his daughter, whether then living or not, were to take; that it was not the intention to exclude afterborn children. Having by this clause indicated the general intent to provide for his daughter and all her heirs, he proceeds to qualify the generality of the devise, by securing it from the control of the husband. For this purpose he interposes a trustee to manage the estate, and directs that his daughter and her children shall have the profits, but that the land should not be sold by them or any of them until the youngest child arrived at age, and not then without the consent of the daughter, if she was then living.
The provision preventing a sale is relied on as shewing an intent to confer a present interest in the profits.
It is clear from that clause, that the testator supposed he had invested them with some interest; and therefore the daughter did not take a fee. But it does not prove that he intended to give a present interest in *446 the profits. If that was his intention, the prohibition * from selling would have been idle; for of what consequence could it be to the others, that one should sell, if each was entitled to his aliquot proportion .? That would neither be enlarged nor diminished by such a sale. It seems to me, he intended to keep the property together until the youngest child arrived at age, at all events, and until the death of his daughter, if she outlived that event. Whilst she lived, the provision was for her benefit: if she died before the youngest child arrived at age, the property was to be managed by the trustee for the support and benefit of the family : if she survived that event, the property was still to remain unsold, unless by her consent. Until the youngest child arrived at age, the testator contemplated a comfortable provision for his daughter, and relied on her maternal tenderness to provide for the children, according to their wants and at her discretion. After they attained full age, he intended that she should still control the property during her life: and that is what he meant by prohibiting a sale without her consent. But if she died before the youngest arrived at age, as the wants of the younger members of the family might and certainly would exceed those of the children who were able to take care of themselves, the estate was to be kept together and managed for the children by the trustee. The property would thus be disposed of in such a way as in any event to secure a provision, first, for the daughter; secondly, through her, and at her discretion, for the children; and thirdly, for the younger children through the trustee, if they should be deprived of their mother before they attained full age.
I think, therefore, that the children took no present interest in the profits during the lifetime of their mother. If they took any such interest, I know of no other mode of securing it to them, than by holding that each took equally and had the absolute right to his portion. The *447 daughter, it seems to me, was entitled to the whole for life, with remainder to all the children after her death, vesting in those living at the death of the testator, and in any afterborn children as they successively came into being; and this construction is in conformity with the decision of this court in Wallace & ux. v. Dold’s ex’ors & al.
I think, therefore, that the decree should be reversed, and the bill dismissed.
Stanard, J.
Had I been one of the court that decided the case of Wallace & wife v. Dold’s ex'ors & al. I should have concurred in the opinion of president Tucker. The principles of that opinion I still approve, and I think the cases cited by that judge fully sustained the main position of his opinion, that, on the proper construction of the will, the child took a present interest, not liable to be divested at the discretion or will of the mother. In the case in judgment, I think the argument of that opinion, and the cases referred to in it, conclude with equal if not greater cogency in support of a construction of the will, whereby the children take a present interest in the profits, which, however small the property, is not destructible at the will or discretion of the mother, and for which, if withheld, the injured child is entitled to a remedy in equity.
Cabell, P.
approving the decision in Wallace & wife v. Dold's ex’ors & al. and being of opinion that it ruled the present case, held that the decree ought to be reversed and the bill dismissed.
Decree reversed and bill dismissed.