MARY A. SLATER & others *vs.* CHARLES R. HURLBUT & another.

Worcester.    October 6, 1887. — March 3, 1888.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Will — Executor — Trust and Trustee.*

A testator, after a bequest and devise of land for life to his wife, she to pay for repairs, insurance, and taxes, devised all the residue of his real estate, including the remainder of that given to his wife for life, to his sisters absolutely, requested his executor to insure and repair "all my buildings," and not to sell "any of my real estate" unless upon the sisters' written request "in performance of the duties of the trust," desired him to take commissions "on all the rents," and directed him to collect the rents monthly, to pay all taxes, and to pay over the balance to those entitled thereto. *Held*, that the executor, after distributing the personal estate and after two years from the filing of his bond, was not entitled, against the wishes of the residuary devisees, to continue to manage the real estate and to receive compensation therefor.

PETITION to the judge of probate, by the three sisters of Luther Slater, against his executor and widow, for the construction of the will. The material clauses of the will were the following:

"Item.    I devise and bequeath to my beloved wife, Ella S. Slater, the use, income, and improvement of my two dwelling-houses, land, and the appurtenances, situated on the corner of Austin and Temple Streets in that part of Cambridge in said Commonwealth called and known as Cambridgeport. To have and to hold the same to her for and during her natural life. She to keep said dwellings in good repair and insured for a reasonable amount, and to pay all taxes on the same.

" Item. I give and bequeath to my said wife, Ella S. Slater, one half of all the personal estate which I shall possess at the time of my decease. To have and to hold the same to the said Ella S. Slater, her heirs and assigns, to her and their use and behoof forever.

" Item. I devise and bequeath to my three sisters, N. Catharine Emerson, Elizabeth A. Slater, and Mary A. Slater, the reversion or remainder of said dwelling-houses in Cambridgeport, the land, and the appurtenances, and all profit, income, and advantages that may result therefrom, from and after the decease of my said wife, to them and their use and behoof forever. I also give to my said sisters all the furniture of mine which they may have now in their possession.

" Item. All the rest and residue of my estate, real, personal, or mixed, of which I shall die seised and possessed, or to which I shall be entitled at the time of my decease, I give, devise, and bequeath to my said three sisters, N. Catharine Emerson, Elizabeth A. Slater, and Mary A. Slater, as joint tenants, share and share alike; should either of my sisters die before me, then the surviving sisters shall receive the share of the deceased sister, to be divided equally; in case of the death of two of my sisters before my death, then I direct that the surviving sister shall have and receive the whole of the residue of my estate.

" Item. I do nominate and appoint Charles R. Hurlbut of said Worcester to be the executor of this my last will and testament. I hereby request my said executor to keep all my buildings insured for a reasonable amount, and to keep said buildings in proper repair, and I further request my said executor not to sell any of my real estate unless my sisters or the survivors or survivor of my said sisters shall request in writing such sale to be made, and I hereby authorize and empower my said executor, or whoever shall execute this will, if in the performance of the duties of the trust it becomes necessary or expedient to sell any or all of my real estate, and my said sisters, the survivors or survivor of my said sisters, shall so request in writing, then I give to my said executor, or whoever shall execute this will, power and authority to sell any of my real estate at auction or private sale, and to execute and declare good and sufficient deeds to convey the same.

" I hereby devise and desire that my said executor shall have and receive a commission of five per cent on all the rents which he shall collect and receive for the use of my real estate, and shall have the use of the house he now occupies free from rent while he shall act as my executor, which said commission of five per cent and the free use of the house he now occupies shall be payment in full as executor of this will, and for all his services as executor.

" I further direct my said executor to collect the rents monthly, to pay all taxes upon my said estate, and to reserve from each monthly payment of rent one twelfth of the amount due for taxes, and to pay the balance of the rents, after deducting his commission of five per cent, to the persons who shall be legally entitled to have and receive the same by this will."

The petition alleged that the executor had distributed and paid over all the personal estate in accordance with the will, except certain bonds and papers that were stolen and never came to his hands; that he had filed his third account showing no assets in his hands; that more than two years had elapsed since his bond was filed; and that the estate had been fully settled, unless by reason of any question arising under the will.

The petition also alleged that the executor claimed the right and duty to continue to act as executor under the will; that his executorship would not expire until the same had been carried out and performed, and the bonds and papers recovered, notwithstanding the distribution of assets; and that he had the right to collect rents and pay taxes, insurance, and repairs upon the house now occupied by him so long as he occupied it, and also taxes, insurance, and repairs upon the real estate devised to the petitioners, and to continue to occupy the house rent free.

The petitioners contended that the executor had performed all the duties imposed upon him by the will, and that he had no right to continue to charge commissions or to have his house rent free, and asked the judge of probate to decree that the trust was terminated, and to hear and determine the following questions arising under the will:

" 1. Is the distribution of assets, leaving no balance in the executor's hands, to be considered a final account and termination of his trust, or is said executor, by reason of said requests,

directions, and power to sell, to continue as such for the purpose of complying therewith? 2. Do said requests, directions, and power impose a trust not terminated by the distribution of the personal estate, or a mere power, the purpose of which was accomplished upon said distribution? If the former, what is the duration of the trust? 3. How long, by the terms of the will, has the executor a right to collect the rents and be paid therefor in free house rent and commissions of five per cent? 4. Has the executor, if said requests, directions, and power impose a trust continuing after said distribution, the right to deduct and pay taxes, repairs, and insurance upon the house occupied by him rent free from the rents of the real estate devised to the residuary devisees? 5. Does any request, direction, or power conferred by the will impose any such trust as longer to necessitate the continuance of an executor? and if so, what is that request, direction, or power? 6. Is it the intent of the testator that all the duties of the executor, and his payment for their performance in commissions and house rent, should cease upon distribution of personal assets? If not, upon the happening of what event or events do they cease?"

The judge of probate made a decree, that no trust was created by the will of Luther Slater which was not terminated upon the distribution of the personal property, and that the duties of the executor ceased when such distribution was made. From this decree the respondents appealed.

The case was heard in this court, before *Gardner*, J., who made a decree that the will created a trust in the executor which was not terminated upon the distribution of the personal property, and that the duties of the executor did not cease when the distribution was made, but would continue during the life of the widow; and reversed the decree of the judge of probate. The petitioners appealed to the full court.

*C. A. Merrill*, for the petitioners.

*W. S. B. Hopkins*, for the respondents.

1. This will uses words fully adequate to create a trust and an interest in favor of the executor. "Wish and request," "authorize and empower," "devise and desire," not to add the word "direct" in especial connection with collecting rents, have all been adjudicated apt to create trusts. *Pierson* v. *Garnet*, 2

Bro. C. C. 38. *Foley* v. *Parry*, 2 Myl. & K. 138, 144. Trusts arise by implication from the provisions of a will, in order to carry out the testator's intention where there is no corpus given to the trustee. *Walker* v. *Whiting*, 23 Pick. 313. *Braman* v. *Stiles*, 2 Pick. 460. *Fay* v. *Taft*, 12 Cush. 448.

2. The evidences in this will of a confidence and duty intrusted to this executor, and that they extend at least over the period of the wife's life, are numerous. The testator expressly directs his executor to collect the rents monthly, to pay the taxes, to deduct one twelfth from the rents to pay taxes and commissions with, and to pay over the balance to those entitled to the same under his will. The testator "requests" the performance of those duties which pertain to the actual charge of the estate; and foreseeing that the trust — for he calls it a "trust" — might last so long that a question of the desirability of selling might arise, he vests the executor with a power to sell. The terms of the power to sell, and the requests connected with it, import that the testator intended to place, and supposed he did place, the executor in a position of long continuing responsibility and management, and are inconsistent with the limitation of the duty to two years or less. The words "in the performance of the duties of the trust it becomes necessary," &c., cannot refer to the ordinary settlement of the personalty and payment of debts. The testator then proceeds to "devise," as well as appoint by the expression of a "desire," that his executor should have a house free and a commission on rents for his compensation, with which ordinary executors have nothing to do. This compensation is to be "in full as executor of this will, and for all his services as executor." Does not this indicate that the testator had imposed two sets of duties, — first, the execution of the will in the regular probate channel, and second, the charge of the real estate, of which the beneficiaries were all women? The determination of the trust, in view of the various provisions of the will, is to take place when the widow dies and the residuary legatees come into possession of the "reversion or remainder" which is devised to them by the third item. Up to that time the management of the whole is in the executor. When no interest remains in any of the testator's realty, except that given to the daughters, viz. the fee, the executor's duties regarding the real estate will terminate.

C. ALLEN, J. The question in this case is, whether under the terms of the will the executor is entitled, against the wishes of the residuary devisees, to continue in the management and care of the real estate left by the testator, and to receive the compensation provided in the will for such service.

So far as the personal estate of the testator is concerned, the executor has performed his duties and discharged his trust; unless hereafter the stolen bonds or some of them shall be recovered. There is nothing to show any probability of his receiving anything from this source. Two years have expired since the filing of his bond, and full distribution has been made of all the personal property in his hands. It is not contended in argument that the fact of the outstanding bonds furnishes any reason for his continuing in the care of the real estate.

The real estate of the testator was disposed of in this manner: certain of it was given to his wife, for her life, and all the residue, including the remainder of that given to his wife for life, to his sisters. There was a provision that his wife should keep the dwellings upon the land devised to her for life in good repair and insured, and should pay all taxes on the same. But the executor contends that the later provisions of the will have the effect by implication to vest in him an estate in trust in the whole or a part of the real estate, by conferring powers and imposing duties in respect to the same which cannot otherwise be properly executed and performed. *Fay* v. *Taft*, 12 Cush. 448.

In respect to the estate devised to the testator's wife for life, it is not to be supposed that he intended that the executor should exercise the powers and duties which are mentioned, because, in the first place, the testator imposes on her the duty of paying for repairs, insurance, and taxes, and gives to her certain personal property wherewith she may be able to do it; and, moreover, the executor would have no means with which to pay these expenses except from the residuary estate, unless it could be supposed that the testator meant that his wife should furnish to the executor the money for these purposes. Besides, the testator authorizes the executor, upon the request in writing of his sisters, under certain circumstances, to sell the real estate; and if he intended to include in this authority the land given to his wife for life, it would seem probable that he would have required

her consent also. It must be considered that the testator did not intend to give his executor authority over the estates devised to his wife for life, although in terms the language includes all of his real estate. This conclusion is more easily reached, because the whole will shows a considerable want of accuracy in the use of language.

In respect to the residuary estate devised to the testator's sisters, the question is certainly far from clear, and it must be conceded that it is not easy to account for the various provisions by assuming that the testator inserted them merely in order that his executor should have the charge and management of the estates during the time required for the discharge of the ordinary duties of an executor. They seem to be more extensive and permanent than would naturally be expected for such a limited purpose. But, on the other hand, various considerations lead to the contrary inference. There is no express devise to him in trust; the devises to the testator's sisters are absolute and unqualified in their terms; their ages are not given, but at any rate it is assumed that at present they are all of age and *sui juris;* the will discloses no reason for the creation or permanent continuance of a trust in respect to their estates, unless for the purpose of benefiting the executor; there is no language necessarily implying that the executor was to perform duties or exercise powers which implied the vesting of a trust estate in him; he was not to sell the property unless by the written request of the testator's sisters; the other provisions were mostly in the nature of requests to the executor, and are susceptible of the construction that the testator was seeking to furnish assistance to his sisters in the care and management of the property in case they should need it; the final direction to collect rents and pay taxes may have been on the assumption that this should be done if his assistance should be needed, and not otherwise; and on the whole, and especially in view of the absolute character of the earlier provisions wherein the residue is given to the testator's sisters without qualification, we do not find in the later provisions a clear intent to cut down the estates so devised by subjecting them to a trust.

Moreover, even assuming that a trust was created, it is plain that the trustee would take no larger estate than was necessary

for the proper execution of the trust. *Fay* v. *Taft, ubi supra.* The whole beneficial interest in this portion of the estate being vested in the testator's sisters, no other person has an interest to maintain or continue the trust, unless the trustee himself, and a decree for the termination of the trust might properly be entered.* We have not been referred to any case where a trust has been continued merely for the purpose of continuing the compensation of the trustee, and we should be slow to do this unless such clearly was the intention of the founder of the trust. We find no such intention in the present case.

The result is, that, in the opinion of a majority of the court, the decree appealed from must be reversed, and the decree of the judge of probate affirmed. *Decree accordingly.*

---

* See Sears *v.* Choate, *post,* p. 395.