## WAGGAMAN *v.* EARLE.

## EARLE *v.* WAGGAMAN.

ACCOUNTING; AUDITOR'S REPORT; EXCEPTIONS; LOBBYING; SERVICES; LACHES.

1. Where a contract between an attorney and the administrator of C., from whom he received valuable papers in a number of French spoliation claims, provided that the administrator was to receive 25 per cent of the fees realized, after deducting certain expenses, including "office rent," it was *held*, on an accounting between the parties, that a charge of $35.96 out of $45 a month, office rent, paid by the attorney, against such contract, was not unreasonable, it appearing that the attorney's office was maintained almost exclusively for the prosecution of claims of that character.

2. The findings of a master or auditor, concurred in by the court below, are to be taken as presumptively correct, and will be permitted to stand, unless some obvious error has intervened in the application of the law or the principles of the decree under which he acts, or some important mistake has been made in the evidence, which has been clearly pointed out and made manifest. (Following *Richardson* v. *Van Auken*, 5 App. D. C. 209.)

3. Exceptions to the allowance by the auditor in an accounting, of items of office expenses aggregating specified sums, covering specified dates, upon the ground that, on the evidence before him, he should have disallowed

such items, are too general to be considered on appeal. (Following *Richardson* v. *Van Auken*, 5 App. D. C. 209.)

4. Where a contract between an attorney prosecuting certain claims and another provided for the allowance to the attorney of "clerk hire," and for compensation to assistant attorneys before distribution of the fees realized, an allowance by the auditor to the attorney's estate, of $65 a month each for two clerks, and $100 a month to an associate attorney, for services covering a period of years, was *held* not to be unreasonable, in the absence of countervailing proof.

5. In an accounting between the estate of an attorney and another, involving the distribution of fees realized in the prosecution of government claims, allowances to the attorney's estate for the professional services of several persons, alleged to have been rendered in collecting the fees, were *held* to be improper, where it appeared that the services were of the kind known as "lobbying services." (Following *Owens* v. *Wilkinson*, 20 App. D. C. 51.)

6. Where an item allowed by the auditor in an accounting is not on its face unreasonable, it is incumbent upon the party objecting to show the impropriety of its allowance.

7. The claim that the complainant is guilty of laches, and that the defendant is entitled to the benefit of the statute of limitations (made in argument only), is untenable, in a suit against an attorney's estate for an account of fees realized in the prosecution of government claims, where but two appropriations were made to pay the claims, one in 1893 and the other in 1899, and the defendant alleges that the expenses incurred in the prosecution of the claims up to 1893 exceeded the appropriation then made, and the suit, after the failure of negotiations for a settlement, was filed within two years after the last appropriation.

Nos. 1422 and 1423.   Submitted May 5, 1905.   Decided May 23, 1905.

HEARING on cross appeals from a decree of the Supreme Court of the District of Columbia, overruling exceptions to and confirming a report of the auditor of that court, in a suit for an accounting.                                                    *Reversed.*

The COURT in the opinion stated the facts as follows:

These are cross appeals from one and the same decree of the supreme court of the District in a proceeding in equity for accounting between the parties.

It appears from the record that James H. Causten, long since deceased, and formerly a resident of this District, had accumulated papers deemed to be of great value with reference to the numerous claims against the United States known as the "French spoliation claims," growing out of the treaty of 1880 between France and the United States. Under some arrangement between his legal representatives and Mr. William E. Earle, now deceased, but formerly a lawyer resident in this city and District, these papers came into the hands of Mr. Earle. In course of time Thomas E. Waggaman was appointed administrator *de bonis non* with the will annexed of James H. Causten; and as the times seemed to have become more propitious than they had been for the allowance and payment of the claims in question, Waggaman, as administrator, with the ratification and approval of the orphans' court, entered into a contract in writing with Earle, whereby the latter was to have the continued possession of the Causten papers for use in the prosecution of the French spoliation claims, of all or nearly all of which he had then acquired, or afterwards acquired, the charge and control; and for such continued possession and use he was to pay to Waggaman 25 per centum of all the fees which he should receive on account of these claims, "after deducting the proper expenses incurred by him since the passage of the act of Congress referring said cases to the court of claims (act of January 20, 1885, 23 Stat. at L. 283, chap. 25, U. S. Comp. Stat. 1901, p. 750), in the prosecution of said French spoliation claims, such as clerk hire, printing, advertising, office rent, and the compensation of other attorneys necessarily associated with him, and in whose compensation said Earle does not share."

It was a further provision of the agreement that Earle should keep books of account of the expenses incidental to the prosecution of the claims, which should be open at all times to the inspection of Causten's administrator; and that settlements should be made every six months, and the proportionate share of the fees paid to the administrator. This provision, so far as the semiannual payments were concerned, was not observed;

and Waggaman was not satisfied with the manner in which the books were kept.

The agreement was entered into on June 12, 1885, and Earle died on August 13, 1894. In the meantime a large number of the claims had been prosecuted to a successful issue in the court of claims, and had been certified back to Congress for its final action thereon, and for an appropriation for their payment, in the event of the approval by Congress of the action of the court of claims. By an act of March 3, 1891, 26 Stat. at L. 897, chap. 540, Congress approved in part the findings of the court, which were only findings, and not formal judgments, and made an appropriation for partial payment. Out of this appropriation, according to his own showing at the time to Waggaman, Mr. Earle received as fees up to July, 1893, the sum of $38,-745.63, while his books showed expenditures to the date last mentioned amounting to $57,318.66. Instead of the surplus to be divided, there was therefore a deficiency of upwards of $18,-000. Fees, however, to the amount of nearly $50,000 were anticipated from an additional appropriation which it was hoped would be made in 1893, but which was not made. And there was no further appropriation until 1899, upwards of four years after Earle's death, when, under an appropriation act of March 3, 1899, 30 Stat. at L. 1191, chap. 426, fees were received by the administrator of Earle, amounting to $50,176.64.

Thereafter, negotiations for a settlement between Earle's administrator and Causten's administrator having proved abortive, the present proceeding was instituted by the latter for an accounting. After pleadings in due form, the cause was referred to the auditor of the court for the statement of an account, and that officer, after considerable testimony had been adduced which was returned to the court with his report, found the sum of $7,462.20 to be due from the defendant to the complainant. Exceptions were filed by both parties, which will be noticed more in detail hereafter. The court overruled them all, and ratified the auditor's report, without any order or decree for the payment of the amount so found due, and from the order of ratification both parties have appealed to this court.

*Mr. W. J. Miller, Mr. S. T. Thomas, Mr. M. J. Colbert,* and *Mr. Irving Williamson* for Waggaman.

*Mr. John C. Gittings* for Earle.

Mr. Justice MORRIS delivered the opinion of the Court:

The complainant, Waggaman, filed nine exceptions to the auditor's report; the defendant, Earle, filed six. We will first consider those of the complainant.

1. The first of the complainant's exceptions is to the allowance of $3,448.17 for office rent claimed to have been paid by Earle from August 1, 1885, soon after the agreement became effective, to August 1, 1893, the month and year in which Earle died. It is argued that Earle was a lawyer in general practice presumably maintaining an office for that purpose; that his whole office rent was $45 a month; that more than two thirds of this, or $35.96 a month is charged against the Causten contract, and that one half of this sum would have been a sufficient allowance. But the contract provides for the allowance of "office rent," and it is in evidence that Earle had little or no other legal business except that of the French spoliation claims. His office seems to have been maintained almost exclusively for the prosecution of those claims, and we do not find that four fifths, or thereabouts, of the $45 which he paid each month is an exorbitant charge against the business, which was almost his exclusive business. In the ultimate analysis, this is only a charge of about one fifth of the rent against the Causten estate. We regard this exception as having been properly overruled.

2, 3. The second exception is to the allowance of items of "office expenses" amounting to $18,332.15, alleged to have been incurred to July 15, 1893, just before Earle's death; and the third exception, which is of a similar character, is to the allowance of a similar aggregate of items, amounting to $1,993.39, claimed to have been incurred between July 15, 1893, and No-

vember 1, 1900.* And these are objected to for the reason that there is no sufficient proof of them, and that it was incumbent upon the defendant to adduce such proof. Undoubtedly it is the law that upon him who would make a charge against another lies the burden of proof that the charge is just. In this case, by his agreement, Earle undertook to keep proper books of account, which on their face would show the propriety of the items of expense which he would charge against the other contracting party; and it may well be that, in this aggregate sum of $20,325.54 there are numerous items which should not have been included in the account. But there are numerous other items, such as for printing and copying, for example, which are undoubtedly just and proper. But some allowance must be made for the difficulties of proof resulting from Mr. Earle's death, and other circumstances referred to in testimony; and the case is a proper one for us, in the hearing in this court, to apply the rule laid down and applied in the case of *Richardson* v. *Van Auken,* 5 App. D. C. 209, and in the several cases there cited, that an appellate tribunal cannot consider vague and indefinite and merely general exceptions to an auditor's report. This court cannot substitute itself for the auditor, and go over the details of an account for itself, beyond what it specifically pointed out as error.

In the case of *Richardson* v. *Van Auken,* above cited, it was said: "The findings of a master or an auditor, concurred in by the court below, are to be taken as presumptively correct, and will be permitted to stand, unless some obvious error has inter-

---

*Note.—The exceptions in question read as follows:

"2. Because the auditor in and by his said report has allowed the defendant credit for $18,332.15 for 'other office expenses to July 15, 1893,' alleged to have been paid by William E. Earle in the prosecution of French spoliation claims; whereas on the evidence before him the auditor should have disallowed said claim.

"3. Because the auditor in and by his said report has allowed to the defendant the sum of $1,993.39 for 'office expenses from said date to November 1, 1900,' alleged to have been paid by the defendant in the prosecution of French spoliation claims; whereas said auditor on the evidence before him should have disallowed said claim."—Reporter.

vened in the application of the law or the principles of the decree under which he acts, or·some important mistake has been made in the evidence, and which has been clearly pointed out and made manifest." We see no reason why this rule should not be applied to the complainant's second and third exceptions and the assignments of error based upon them. These exceptions are too general.

4, 5. The complainant's fourth exception is to the allowance of a sum of $6,150, paid by Mr. Earle during a period of eight years to Mr. William T. S. Curtis, which is less than at the rate of $65 a month; and his fifth exception is to the allowance of a sum of $10,400, paid by him during the same period to T. J. Pickett for similar clerical services, and ultimately also for legal services as an associate attorney, which is at the rate of a little over $100 a month. These compensations do not seem to be excessive. Curtis and Pickett testified that they rendered the services; that those services were practically continuous and engrossing enough, and that they received the money for them from Earle. In the absence of countervailing proof by the complainant, it is difficult to see why these items of expense should be held unreasonable. The contract provided for the allowance of "clerk hire" and for compensation to assistant attorneys, and we fail to see wherein the auditor has erred in these two allowances to the defendant.

6, 7, 8. The sixth, seventh, and eighth exceptions of the complainant are to three several allowances—one for $2,000, a second for $2,500, and a third for $2,000—to three several persons claimed to be for "professional services" rendered by them. We find it impossible to read the record without coming to the conclusion that these alleged services were of the kind known as "lobbying services." The proof, indeed, in regard to them is of the vaguest character, and utterly insufficient in any event to support them as proper charges in this accounting. But, so far as it goes, it points unmistakably to those illicit services, personal influence and personal solicitation, which the courts have branded as improper for their consideration, and for which they will not allow recovery. It is a peculiar fact that no one of the

persons to whom these several sums are claimed to have been paid was called to testify in regard to them, although they were all accessible and could easily have been summoned. The inference from this omission is not favorable to the defendant's claim for these allowances.

There is some feeble pretense that one of the parties prepared a brief for use before one of the committees of Congress, but it is the merest pretense and wholly unworthy of consideration. There is no reason to suppose that a copy of the brief could not have been produced if it ever existed, nor does it appear what exigency there was for the preparation of such a brief.

If these alleged services were legitimate and professional, it is not apparent why they could not have been rendered by Mr. Earle himself. He was fully competent, and his contract with Waggaman included them. If, on the contrary, they were of the lobbying kind and illegitimate, they should not be allowed. In either case they are improper charges against the interest represented by the complainant. In fact, as disclosed by the record, Mr. Earle, during his lifetime, in his communications with some of the persons interested in the Causten estate, admitted the true character of these expenditures, and sought in vain to have them legitimated and recognized.

Under the decision of this court in the case of *Owens* v. *Wilkinson*, 20 App. D. C. 51, and under the decisions therein cited, we must hold that these items should have been excluded from this account, and that it was error to admit them.*

9. The complainant's ninth and last exception was to an allowance of $700 to one L. B. Clark for his expense and compensation for making some investigation among the records of the custom houses in Rhode Island and Connecticut in connection with the French spoliation claims. The special purpose of this investigation is not fully disclosed; but the item on its face is not unreasonable, and, under the rule heretofore stated, it is incumbent in this court upon the complainant to show the impro-

---

*See also *Consaul* v. *Cummings*, 24 App. D. C. 36.—Reporter.

priety of its allowance.    This has not been done, and we cannot disturb the finding.

10. The defendant filed six exceptions, and bases assignments of error upon each and all of them.    It would subserve no good purpose to consider them in detail.    It must suffice to say that we regard no one of them as well founded.    Some of them are directed to the refusal of the auditor to allow for certain alleged services evidently of a lobbying character, but which he regarded as more objectionable than those which he allowed, and which we hold should have been excluded from the account.

There is considerable insistence by the defendant upon the supposed laches of the complainant,—that is, his delay in the institution of proceedings to enforce his claim; and the benefit of the statute of limitations is sought by him, not in his answer to the bill, or anywhere in the pleadings, but only in argument.    But if there are any laches in this case, they are the laches rather of the defendant than of the complainant.    It was claimed by Mr. William E. Earle, and the statement is reasserted by the defendant in his brief, that up to July, 1893, there was no surplus of fees to be divided with the Causten estate, but rather a deficit of upwards of $18,000.    Now, if this statement was correct, there was nothing to be divided until after the passage of the appropriation bill of March 3, 1899; if it was not true, the statement was a fraud, which the complainant would seem to have no opportunity to discover at the time.    Assuming the statement to have been true, and that there was no money to be divided before March 3, 1899, we fail to see wherein there are any laches on the part of the complainant, who thereupon, after some fruitless negotiations with the defendant, filed the present suit within two years thereafter, on January 2, 1901.    There is no ground for the imputation of laches.

Except in the one feature of the allowance of certain fees for lobbying services, we find no error in the auditor's report, or in the order of the court below ratifying the same.    But for this error the order appealed from must be reversed, with costs against the defendant Earle; and the cause will be remanded to

the supreme court of the District with directions to reform its order in that regard and to enter a decree in accordance with this opinion.   And it is so ordered.                              *Reversed.*