# FRANCE *v.* COLEMAN.

REFERENCES;    AUDITOR;    EQUITY;    CONSTRUCTIVE    TRUSTS;    EQUITABLE
ESTOPPEL.

1. *Quære,* whether extraordinary weight should be given to a report of the auditor in an equity cause, where all of the testimony taken. has, by consent of the parties, been referred to him by the lower court for consideration, with direction to report his findings of fact and conclusions therefrom.

2. The findings of a master or an auditor, concurred in by the court below, are to be taken as presumptively correct, and will be permitted to stand, unless some obvious error has intervened in the application of the law or the principles of the decree under which he acts, or some important mistake has been made in the evidence, which has been clearly pointed out and made manifest.  (Following *Richardson* v. *Van Auken,* 5 App. D. C. 209; *Grafton* v. *Paine,* 7 App. D. C. 256; *Smith* v. *American Bonding & T. Co.* 12 App. D. C. 192; and *Hutchins* v. *Munn,* 28 App. D. C. 271.)

3. Where one making a deed of trust loan to a building owner looks to the land, as improved by the buildings to be constructed, for its repayment, arranging for the payment of the money in instalments as the work progresses, and the parties contracting with the owner to erect the buildings rely upon such advances for the instalments due them under their contract, and the loan so secured amounts to a sum so near the value of the land, with the completed buildings thereon, as to make the mechanics' lien of such contractors practically valueless, because of its subordination to the deed of trust lien, equity, by

applying the doctrine of equitable estoppel, will charge any money due the building owner by the lender on account of such loan with a constructive trust in favor of the contractors for money due them from the building owner on account of their contract with him, although the lender is under no direct promise to pay the contractors or to see that the building owner pays them; but in determining the amount so due, the lender will be given credit for any interest due on the loan. (Following *Anglo-American Sav. & L. Asso.* v. *Campbell*, 13 App. D. C. 581, 43 L.R.A. 622.)

No. 1699. Submitted December 11, 1906. Decided March 19, 1907.

HEARING on an appeal by one of the several defendants from a decree of the Supreme Court of the District of Columbia in a suit to charge a fund in the hands of such defendant with a constructive trust in favor of the complainants.

*Modified and affirmed.*

The COURT in the opinion stated the facts as follows:

The appellees, Joseph M. Coleman and William R. Coon, began this suit in the supreme court of the District, on March 17, 1903, against Samuel E. Redfern, and Henry A. Nesbitt and Lynn O. De Lashmutt, trustees; Evalyn S. Tome, now France; William A. Easterday and Mordecai T. Cockey, trustees; and Alexander M. Gorman and Michael B. Casey.

The bill alleges the following facts substantially: About March 15, 1902, defendant Gorman conveyed to defendant Redfern a certain parcel of land in the city of Washington, which said Redfern subdivided into seven lots on April 17, 1902, as shown by the records in the surveyor's office. On March 17, 1902, the said Redfern executed a conveyance of each of said seven lots to Nesbitt and De Lashmutt, to secure the payment to Evalyn S. Tome of $4,500 on each lot, with interest thereon at 6 per cent payable semiannually; said principal sums represented by promissory notes all due one year after date, and the semiannual interest by fourteen notes for $135 each, seven of the same payable six months after date, and the residue one year thereafter. Said deed in trust was recorded April 18, 1902.

On March 20, 1902, Redfern executed a second deed in trust to Easterday and Cockey, trustees, to secure the payment to the defendant Gorman of the sum of $3,800, balance of purchase money, evidenced by four notes for $760 each, payable sixty days after date, and two other notes for $1,140 each, payable ninety days after date, with 6 per cent interest. Said deed in trust was recorded April 19, 1902. The said land was unimproved, and it was agreed between Redfern and Gorman that, if Redfern would take a conveyance of the title, Gorman would arrange a building loan for him sufficient to erect seven houses thereon, one on each lot of the subdivision to be made, according to plans and specifications to be prepared by one N. T. Haller, architect. Said plans and specifications having been prepared, Gorman negotiated the aforesaid loan of $4,500 per lot through De Lashmutt, the agent of Evalyn S. Tome, with the stipulation that said loan should be advanced in instalments as the work on the said houses should progress, and in proportion to the work done and materials used; a sum being reserved until after the completion of the said houses. After making the arrangement aforesaid, Redfern and Gorman informed the complainants of the same, and Redfern entered into negotiations with them for the construction of said houses. On March 27, 1902, Redfern and complainants entered into a contract whereby complainants agreed to construct said houses according to the plans and specifications aforesaid, the same to be completed on or before September 1, 1902. Redfern agreed to pay them the sum of $24,500 for the materials and labor necessary to complete said houses. Of this sum $2,000 was to be paid in a conveyance of one house to complainants, subject to the mortgage aforesaid of $4,500 thereon in favor of Mrs. Tome. The remainder was to be paid in instalments as follows:

When the first-floor joists are on complete, $2,000.00.

When the second-floor joists are on complete, $2,000.00.

When the third-floor joists are on complete, $2,000.00.

When the buildings are tinned in and roofing complete, $2,000.00.

When the buildings are ready for plastering, $2,000.00.

When the buildings are completely plastered, $2,300.00.

When the buildings are trimmed out, $2,800.00.

After deducting the $2,000 on account of the conveyance of the house aforesaid, the remaining $7,400 was to be paid when the work should be fully completed.

It was provided that for each payment a certificate shall be obtained from the architect that complainants are entitled thereto. If required, the contractors were to furnish satisfactory evidence that no lien does or can exist upon the same. Extra work was provided for in the usual terms. It was further stipulated that the contractors should pay the owner $15 as liquidated damages for each and every day the work shall remain unfinished after September 1, 1902, but for each and every day of delay caused by the owner an additional day shall be allowed the contractors for the completion of the work. Complainants were advised of the building loan aforesaid and looked to the sums payable thereunder for payment. They also executed a bond to secure performance on their part in the sum of $20,000. A long delay was occasioned by the efforts of said Redfern to have the land subdivided into the lots aforesaid, in order to obtain the necessary permit before commencement of construction; and other delays in construction were caused by the failure of Redfern to remove a frame building that encroached upon the land, and to obtain a necessary sewer construction. The said Evalyn S. Tome knew the complainants were engaged in furnishing the materials and doing the work required by their contraact, and expected to be compensated out of the loan obtained from her. That complainants completed the work on or about March 1, 1903, and received payments during the progress thereof of $15,100, part of which was for extra work. The balance due complainants was $9,594, for which, on March 6, 1903, they filed a lien giving notice to Redfern and to De Lashmutt, as agent for Mrs. Tome. That at the time of the completion of the work Mrs. Tome had in her hands $5,400 of the loan made to Redfern, which she refused to pay to Redfern for complainants. That if by reason of any agreement between her and Redfern the said Mrs. Tome is not liable to

complainants for the payment of said sum to them, then they are entitled to be subrogated to her rights in the premises. Other allegations refer to Casey, subcontractor, who claimed an unpaid balance of $1,653.86, and in the present attitude of the case are immaterial. Among many prayers, are certain ones to require Mrs. Tome to pay into the registry of the court the balance of said loan; that said sum due be declared a trust fund; and that complainants may have a lien declared and enforced against the same; and for general relief.

Defendant Tome, joined by the trustees Nesbitt and De Lashmutt, answered the bill, admitting the facts stated as to the loan, and the building contract, but expressly denying any knowledge that complainants relied on the said loan, and that there was any understanding or agreement as to payment to or for the benefit of complainants. They deny that there is a balance of $5,400 due Redfern on the said loan. They aver that interest is due by Redfern for one year that is justly payable from the said loan. They further aver that Redfern defaulted in the payment of said notes and interest when due, and that the property was advertised by said trustees under said trust, and, on March 31, 1903, sold thereunder for the sum of $29,500. That the same was purchased by one T. J. De Lashmutt for that sum, and the said amount was subject to the payment of expenses of sale, amounting in gross to $1,587.15. It was expressly denied that the houses were ever completed by the complainants.

Redfern's answer admits the execution of the several conveyances and contracts alleged by complainants. He denies that Gorman had any interest in the property after sale, except as regards the second deed in trust to secure $3,800 of the purchase price of the land; and admits that Gorman was his agent to procure the building loan. He alleges that he was solvent, and that fact was the inducement to complainants to contract with him, and denies that the loan of Mrs. Tome was for the express purpose of building the houses, or that he assured complainants that the money he received therefrom would be applied to their payment. He denies the completion of the houses according to contract, and alleges that as his reason for withhold-

ing the last payment. He avers that Mrs. Tome withheld the last payment of $5,400 for the reason that the houses were not completed. Gorman's answer admits the procurement of the building loan as broker for Redfern, and denies any promise or assurance to complainants of payment from the proceeds of the same.

After the testimony had been taken, the cause was referred, by consent, to the auditor to consider the testimony, and "make therefrom such findings of fact as he may deem necessary for the aid of the court, and present his conclusions therefrom, with such schedules of account as he may find to be necessary."

The auditor's report recites the several contracts and instruments set out in the pleadings. It also recites the separate contract between Mrs. Tome and Redfern, providing for the payments secured in the deed of trust. In this, Redfern promises to erect the houses according to the plans and specifications of Haller, and have them completed on or before September 1, 1902, clear of all mechanics' liens. Mrs. Tome promises to pay the $31,500 in instalments as follows: 1. When the title is declared clear and all taxes paid, $7,000. 2. When the first-floor joists are certified to be in place by the architect and De Lashmutt, $2,800. 3. When second-floor joists are so certified, $2,800. 4. When the third-floor joists are so certified, $2,800. 5. When the roofs are so certified as on, $2,800. 6. When the houses are so certified as fully studded and ready for plastering, $2,800. 7. When the houses are so certified as fully plastered, $2,300. 8. When said buildings are so certified as completely trimmed out, including heating, tiling, and plumbing, $2,800. 9. When said houses are so certified as fully finished and ready for occupancy, $5,400. $4,000 of fire insurance upon each house when roofed is to be taken out for the term of the loan, and made payable to the trustees of Mrs. Tome.

The auditor reports the findings of fact substantially as follows: 1. The complainants began the construction of the houses about April 17, 1902, as soon as Redfern secured the necessary permit therefor. 2. That the houses were fully completed according to plans and specifications about January 1,

1903.  3. That payments to Redfern under the loan contract were made from time to time as the buildings reached the stages required, upon certificates of such construction signed by the architect and De Lashmutt.  That De Lashmutt was the agent of Mrs. Tome for the purpose, and all drafts for the payments made were sent to him for delivery.  That the last joint certificate of the architect and De Lashmutt was given November 25, 1902, to the effect that the houses were completely trimmed out, including heating, tiling, and plumbing.  That payments were made to the complainants after the receipts by Redfern of the loan instalments, but with frequent delays.  That the complainants looked to the building loan for the payments under their contract, relying upon the assurances of Redfern and De Lashmutt that there would be sufficient money for the purpose.  That there were delays on the part of the contractors, which were chargeable to them, and others chargeable to Redfern, and the balance of the forty-six days at $15 per day was charged against the complainants.  That Evalyn S. Tome retained the sum of $5,400 of the loan after the completion of the buildings, and refused to pay the same.  That Mrs. Tome advertised the property for sale, and it was sold to her agent for her on March 31, 1903, for $29,750.

In accordance with these findings, the auditor allowed Redfern credit for the $2,000 on account of the house agreed to be taken by the complainants in part payment, and for the forty-six days' delay found against complainants, and reported the sum of $7,066 as the balance due complainants on the contract.  He also found that Evalyn S. Tome was liable for the payment of the retained sum of $5,400, and disallowed her claim for interest, and for all expenses of the sale, and of repairs and improvements made by her thereafter.

Exceptions were taken to this report by Evalyn S. France, who had, in the meantime, become the wife of France.

These exceptions were overruled by the court, and a final decree entered confirming the report, ordering Redfern to pay to complainants the sum of $7,066, with interest from February

1, 1903; and Evalyn S. France to pay them the sum of $5,400 with interest from February 1, 1903.*

From this decree Evalyn S. France alone appealed, having obtained an order granting severance from the other defendants.

*Mr. George Whitelock, Mr. David Fowler, Mr. George E. Hamilton, Mr. Michael J. Colbert,* and *Mr. John J. Hamilton* for the appellant.

*Mr. W. H. Sholes* and *Mr. Bates Warren* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

Without passing upon the question that has been argued at length, whether extraordinary weight shall be given to the report of the auditor, by reason of the fact that the whole testimony was referred to him for consideration, by consent, with direction to report his findings of fact and conclusions therefrom, we shall treat it as the report of a master or auditor made in the ordinary course of proceedings in equity.

It is well settled that the conclusions of such a referee, depending upon the weighing of conflicting evidence, have every reasonable presumption in their favor, and are not to be set aside unless mistake or error therein is made clearly to appear. *Tilghman* v. *Proctor,* 125 U. S. 136, 149, 31 L. ed. 664, 668, 8 Sup. Ct. Rep. 894. "The findings of a master or an auditor, concurred in by the court below, are to be taken as presumptively correct, and will be permitted to stand, unless some obvious error has intervened in the application of the law or the principles of the decree under which he acts, or some important mistake has been made in the evidence, and which has been clearly pointed out and made manifest." *Richardson* v. *Van*

---

*The decree also provided that when paid by Mrs. France, the $5,400 was to be applied upon the indebtedness of $7,066 found to be due the complainants from Redfern.—Reporter.

*Aulcen,* 5 App. D. C. 209, 213; *Grafton* v. *Paine,* 7 App. D. C. 256, 266; *Smith* v. *American Bonding & T. Co.* 12 App. D. C. 192, 198; *Hutchins* v. *Munn,* Present Term [28 App. D. C. 271]. The critical review of the evidence and the able argument founded thereon, on behalf of the appellant, have failed to convince us of the existence of any such error or mistake in the auditor's report, which received the unqualified approval of the learned justice who presided on the hearing. On the other hand, a careful examination of all of the evidence, a further review of which we regard as unnecessary, has satisfied us of the correctness of each of his findings of fact. The conclusions from these findings of fact, carried into the decree requiring the appellant to pay to the complainants the balance due on her loan to Redfern, are in strict accord with the rule laid down in *Anglo-American Sav. & L. Asso.* v. *Campbell,* 13 App. D. C. 581, 603, 43 L.R.A. 622. There can be no doubt that the appellant, in lending her money to Redfern, looked to the buildings to be constructed on the lots in question as the chief security for its repayment; and she was careful to arrange for the delivery of it in instalments as the work thereon progressed. It is equally clear that the complainants relied on appellant's advances to Redfern, under the loan contract, for the instalments due by the building contract, under like terms and conditions. The testimony on this point is put beyond doubt by the circumstances of the entire transaction. Redfern had neither sufficient property nor credit, beyond the proceeds of the loan, to warrant any expectation of payment by the complainants from any other source; and the loan was effected for that purpose. The deed in trust by Redfern to secure the loan of appellant, which amounted to a sum so near the value of the lots with the completed buildings thereon, made the mechanics' lien, which the law gave to the complainants, practically valueless, because subordinate to that of the appellant. It is true that the appellant was under no direct promise to pay complainants the money loaned to Redfern, or to see that he applied the sum to the payment of the complainants. Her obligation was discharged by making payment to Redfern when due. But, having induced or

contributed to induce complainants to contract with Redfern, and with their labor and materials to furnish the chief security for her loan to him, it would be unjust and inequitable to permit her to withhold money actually payable to Redfern upon which they relied for their payment. As to such money, a constructive trust, or lien, through the application of the doctrine of equitable estoppel, arose in favor of the complainants, which will be enforced. *Anglo-American Sav. & L. Asso.* v. *Campbell, supra; Angle* v. *Chicago, St. P. M. & O. R. Co.* 151 U. S. 1, 26, 38 L. ed. 55, 67, 14 Sup. Ct. Rep. 240. As found by the auditor, the buildings were completed about January 1, 1903, in accordance with the contract for their construction. At that time, by the terms of the contract with Redfern, the last sum of the loan was payable by her to him. Redfern's obligation to her, by the terms of the notes and the deed in trust, had not then matured, and would not mature until March 17, 1903. She had no excuse, therefore, for withholding the said payment, and the court did not err in impressing it with a trust in favor of complainants, and ordering her to pay it to them.

It remains to consider whether the appellant was entitled to retain from the last payment of $5,400 due to Redfern, the interest that had become due under her contract with him. This interest was payable semiannually, and seven notes for $135 each were held by her for the first instalments thereof, and seven of like amount for the second. As regards the first series, due six months after March 17, 1902, we are of the opinion that the appellant had this right, though she seems not to have claimed it when they matured. Under the authority of the case before cited, all that complainants could claim as impressed with a trust in their favor was the sum actually due and payable to Redfern upon the completion of their contract with him. The exceptions to the report made claim to the entire interest for the year, making no distinction between the two instalments, one of which was due on the other notes. The attention of the auditor seems not to have been specially directed to the claim of the first instalment of interest, as no mention of the same is made in his report. Be that as it may, while right as regards

the second instalment of interest, we are of the opinion that he should have allowed a credit for the first. The appellant had the right to deduct the latter in paying Redfern, in the absence of any stipulation of the contract to the contrary; the former she had not.

The balance of $5,400, due Redfern, would have been reduced to $4,455 by allowing a credit thereon of the first seven notes, amounting to $945; and the decree should have been entered for that amount. The decree will therefore be modified so as to direct the payment by the appellant of the said sum of $4,455, with interest from February 1, 1903, instead of said sum of $5,400; and as so modified is affirmed. One half of the costs of this appeal will be paid by the appellant, and one half by the appellees. It is so ordered.          *Modified and affirmed.*

Mr. Justice McComas dissenting.

An appeal to the Supreme Court of the United States was prayed by the appellant, and allowed April 4, 1907.