**WASHINGTON LOAN & TRUST CO. v. COLBY et al.**

**SAME v. WEHNER et al.**

**Nos. 7236, 7237.**

United States Court of Appeals for the District of Columbia.

Decided Dec. 18, 1939.

Arthur Peter and Arthur C. Keefer, both of Washington, D. C., for appellant.

**744**

Arthur P. Drury and Marcus Borchardt, both of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and STEPHENS and MILLER, Associate Justices.

MILLER, Associate Justice.

Pursuant to the mandates of this court in the cases of Colby v. Riggs Nat. Bank and Wehner v. Riggs Nat. Bank,[1] the lower court, on July 7, 1937, adjudged that Riggs National Bank was liable in the sum of $178,045.49 with interest; appointed trustees to receive that sum for the plaintiffs and interveners in the two cases above-named, and for "all other Shoreham Building noteholders in like situation with said plaintiffs and interveners entitled to share therein * * *." Thereafter both cases were referred to the auditor of the court to determine, among other things, the rights of all persons to participate in the fund. Appellant, Washington Loan and Trust Company, trustee under the will of Clarence B. Rheem, petitioned for the allowance of a claim to participate in the fund, as the holder of 127 notes, aggregating the principal sum of $126,500. The auditor recommended that the claim be disallowed for the reason that appellant had accepted notes secured by a trust deed upon the Shoreham Hotel, in substitution for the Shoreham Office Building notes; had cancelled the latter and extinguished them; consequently that they could not be made the basis of a valid claim. The lower court entered its order overruling appellant's exceptions to the auditor's report and recommendations; and decreed that the report be confirmed. This appeal is from that order and decree.

■ It is well established in the District of Columbia that the findings of an auditor, concurred in by the court below, are presumptively correct and will not be disturbed on appeal unless it is clearly shown that there was obvious error in the application of the law therein, or a conclusion of fact unwarranted by the evidence.[2]

The question to be determined is whether appellant is a "Shoreham Building noteholder in like situation" with the plaintiffs and interveners in the Colby and Wehner cases entitled to share in the fund established in accordance with the decision in those cases. An examination of the fact shows that appellant is not in like situation. Appellant is, and for some time prior to January 7, 1931, had been, the trustee of the estate of Clarence B. Rheem, deceased. Eulalie Rheem Rowe, his widow, and Edmund D. Rheem, his son, are the sole beneficiaries under the trust; the former as life beneficiary and the latter as remainderman. The trust *res* consisted in part of 127 notes, aggregating the principal sum of $126,500, secured by a deed of trust to Luther A. Swartzell and Edmund D. Rheem, upon the Shoreham Office Building in the City of Washington, D. C. Swartzell and Rheem were members of the firm of Swartzell, Rheem & Hensey Company, which firm, under the terms of the trust, had power to collect interest and principal on the notes and to discharge the trust, when full payment had been made. On January 7, 1931, appellant discovered that this deed of trust had been released, although payment of the notes which it held had not been made. Thereupon, Alfred H. Lawson, Vice President of appellant, telephoned to Edmund D. Rheem—who was not only one of the two beneficiaries of the Rheem trust, but also Executive Vice President of the Swartzell Company—and told him that if the trusts had been released and paid, "We have got to have the money for them." To this Rheem replied "I have not the money, but I *reinvested the proceeds of these notes in other notes*." and said he would send those other notes to Lawson. Thereafter, on January 12, 1931, one Brewer, an employee of the Swartzell Company, informed Lawson that Rheem was sick but that he, Brewer, had been instructed to deliver to Lawson the reinvestments of the notes that had been paid; and on January 13, 1931, Brewer delivered to Lawson notes of the Shoreham Hotel Corporation aggregating the sum of $215,000, of which $162,150 purported to be reinvestments of the proceeds of the Shoreham Office Building notes. In fact, however, these notes, so delivered by Brewer, were not reinvestments. Instead, they were in the custodial care of the Swartzell

---

[1] 67 App.D.C. 259, 92 F.2d 183, 114 A.L.R. 1065.

[2] Hutchins v. Munn, 28 App.D.C. 271, 279, 280; Id., 209 U.S. 246, 250, 28 S. Ct. 504, 52 L.Ed. 776; Graves v. Construction Engineers, Inc., 63 App.D.C. 150, 70 F.2d 754; Waggaman v. Earle, 25 App.D.C. 582, 587, 588; Richardson v. Van Auken, 5 App.D.C. 209, 213; Grafton v. Paine, 7 App.D.C. 255, 266; France v. Coleman, 29 App.D.C. 286, 293; Nash v. Milford, 33 App.D.C. 142, 149.

Company; they were wrongfully and fraudulently abstracted by that Company from envelopes in which they were enclosed; and the taking and delivery to appellant were without the consent or knowledge of the true owners. Up to this point, perhaps, except for the dual capacity of Edmund D. Rheem—as beneficiary and as the Executive Vice President of the Swartzell Company—appellant may have been in substantially "like situation" as the other noteholders. From this point on its situation varied materially, as will be seen from the following summary of evidence. Following the delivery of the notes to appellant by Brewer, Eulalie Rheem Rowe and Edmund D. Rheem, on January 15, 1931, sent to appellant a letter, which reads as follows:

"The Washington Loan and Trust Company
"Trustee of the Estate of Clarence B. Rheem
"Washington, D. C.

"Gentlemen:

"You hold as trustee of the estate of Clarence B. Rheem, deceased, the following notes, *the investment of the funds of said estate therein having been authorized by us and made at our request:*

| | |
|---|---|
| D. L. Stern | $7000.00 |
| Robert Allensworth | 9000.00 |
| Broadmoor Corporation | 6800.00 |
| H. P. Jones | 5850.00 |
| Wardman and Bones | 126500.00 |
| Hugh Woods | 6000.00 |
| Archie L. Straub | 1000.00 |
| Total | $162,150.00 |

"We hereby direct you to accept *as a substitution in full for the above notes, as an investment for said estate,* viz., the notes of the Shoreham Hotel Corporation recently sent you at our request by Swartzell, Rheem and Hensey Company, aggregating the sum of $162,150.00, being part of a total loan of $1,650,000.00, secured on one of the new units of the Shoreham Hotel, nearing completion and located on the south side of Calvert Street, west of Connecticut Avenue, in Washington, D. C.

"We are fully acquainted with the terms of the deed of trust securing said loan on the Shoreham Hotel, including the provisions thereof, authorizing the trustees to release the same upon the payment of the debts of Swartzell, Rheem and Hensey. *We have satisfied ourselves as to the security for these notes, and we relieve you of all responsibility for making this investment.* [Italics supplied]

"Very truly yours,
"Eulalie Rheem Rowe
"Edmund D. Rheem."

■■■ Upon receipt of this letter of instruction, appellant accepted the notes of the Shoreham Hotel Corporation as a substitution in full for the Shoreham Office Building notes and as an investment for the estate of Clarence B. Rheem; and on January 16, 1931, cancelled and discharged the Shoreham Office Building notes;[3] but kept them in its own office instead of returning them to the Swartzell Company. On January 26, 1931, the last-named company filed a voluntary petition in bankruptcy and was adjudged bankrupt. Thereafter, on or about March 30, 1931, appellant received from Eulalie Rheem Rowe and Edmund D. Rheem a letter, which reads as follows:

"The Washington Loan and Trust Co.
"Trustee Estate Clarence B. Rheem
"Washington, D. C.

"Gentlemen:

"On or about January 16th, 1931, we, as beneficiaries of the Estate of Clarence B. Rheem, approved your acceptance of certain notes of the Shoreham Hotel Corpora-

---

[3] D.C.Code (1929) tit. 22, § 181, provides that a negotiable instrument is discharged by "the intentional cancellation thereof by the holder." In District of Columbia v. Cornell, 130 U.S. 655, 658, 9 S.Ct. 694, 32 L.Ed. 1041, the Supreme Court held that "It is immaterial whether the cancellation is by destroying the instrument, or by writing or stamping words or lines in ink upon its face, provided the instrument, in the condition in which he puts it, unequivocally shows that it has been cancelled." Although the Cornell case was decided under the law merchant, the principle there announced is applicable here. D.C.Code (1929) tit. 22, § 1, provides that "In any case not provided for in this chapter the rules of the law merchant shall govern." Sections 181, 182 and 185 speak of cancellation but at no place in the statute is there a definition of the term. Hence, resort must be had to the rules of the law merchant for proper application of the term and, therefore, the Cornell case becomes authority. It follows that marking a note "cancelled", as was done in the instant case, is sufficient to discharge the note.

tion, aggregating $162,150.00, purporting to be secured by first trust on part of Lot 6 in Square 2138 which were sent to you on or about January 13, 1931, by the office of Swartzell, Rheem & Hensey Co. as an investment for said Estate of Clarence B. Rheem, deceased.

"Since the delivery to you of these notes certain complications have arisen and we would request that you return the notes to the Trustees of the Estate of the Swartzell, Rheem & Hensey Co., Bankrupt, in order that they may be distributed in accordance with the Court's instructions.

"Yours very truly,
"(s) Eulalie Rheem Rowe
"(s) Edmund D. Rheem."

And on April 13, 1931, appellant voluntarily surrendered the Shoreham Hotel Corporation notes to the trustees in bankruptcy.

[4-6] It is well settled law that a sole beneficiary, or several or successive beneficiaries—all of whom consent and none of whom suffer from disability—may direct that the performance of the trust be arrested, modified, or even extinguished.[4] The applicable rule has been well stated by the Supreme Court of Appeals of Virginia as follows:[5] "Where the persons entitled to the whole beneficial interest are in esse and sui juris, it is one of the first duties of a trustee to execute such conveyances of the legal estate as the cestuis que trustent shall direct."[6] It is equally well settled that the beneficiaries of a trust who suffer from no disability and who have full knowledge of the facts and of their legal rights, may direct the trustees in the investment of trust funds and if losses are sustained they cannot be heard to complain.[7] There is even less reason for permitting a trustee, under the circumstances of the present case, to recoup losses, suffered as a result of the poor judgment or unlawful conduct of such beneficiaries, from funds set apart for the benefit of persons who were in no way responsible for such losses.

Appellant, in its brief, concedes that "If Edmund D. Rheem were attempting to assert herein a claim to participate pro rata with the other creditors * * * his conduct and actions would bar his right because 'he who comes in equity must come with clean hands.'" It seeks to distinguish the other beneficiary, in this respect, but it is not necessary for us to determine whether she was in *pari delicto* with Edmund D. Rheem. It is enough that she joined in the letter of instruction, which, as we have held, was sufficient—together with the acts of the trustee—to extinguish the debt arising from the Office Building notes.

Moreover, the facts of this case do not provide a proper basis upon which to ask the aid of equity to reestablish a trust *res* for the sole purpose of permitting appellant to receive compensation for its services as a trustee.[8] When appellant discovered that the trust deed which secured the Office Building notes had been released with-

---

[4] See Helvering v. Helmholz, 296 U.S. 93, 97, 56 S.Ct. 68, 80 L.Ed. 76; Rowley v. American Trust Co., 144 Va. 375, 132 S.E. 347, 45 A.L.R. 738; Eakle v. Ingram, 142 Cal. 15, 75 P. 566, 100 Am. St.Rep. 99; Manders v. Mercantile Trust & Deposit Co., 147 Md. 448, 128 A. 145; Eastman v. First Nat. Bank, 87 N.H. 189, 177 A. 414; 3 Scott, Trusts (1939) § 337.1; Restatement, Trusts (1935) §§ 337, 342; Note, 45 A.L.R. 743.

[5] Rowley v. American Trust Co., 144 Va. 375, 382, 132 S.E. 347, 349, 45 A.L.R. 738.

[6] Cf. Shelton v. King, 229 U.S. 90, 33 S.Ct. 686, 57 L.Ed. 1086, and McDonald v. Fulton Trust Co., 71 App.D.C. 36, 107 F.2d 237. In these cases the courts refused to terminate the trusts upon the request of the beneficiaries. But there, in each case, the settlors had directed that enjoyment of the benefits of the trust *res* should be postponed. For an excellent treatment of the distinction between the two situations, see 3 Scott, Trusts (1939) § 337.3. See also, Restatement, Trusts (1935) § 337(2). Cf. id. § 342(2). But even in the latter situation, the Supreme Court has recognized that "if the trustees should disregard the time of payment, and pay over to each legatee his or her legacy when they are competent to give a valid discharge, there would be no one who could call them to account." Shelton v. King, supra, 229 U.S. at page 94, 33 S.Ct. at page 687, 57 L.Ed. 1086.

[7] See Zimmerman v. Fraley, 70 Md. 561, 570, 17 A. 560, 562; In re Perkins' Trust Estate, 314 Pa. 49, 170 A. 255; Lawrence v. First Nat. Bank & Trust Co., 266 Mich. 199, 253 N.W. 267; Hunt v. Gontrum, 80 Md. 64, 30 A. 620; 2 Scott, Trusts (1939) §§ 179.4(5), 216, 218; Restatement, Trusts (1935) §§ 216-218.

[8] See Eakle v. Ingram, 142 Cal. 15, 75 P. 566, 100 Am.St.Rep. 99; Slater v. Hurlbut, 146 Mass. 308, 15 N.E. 790. See also, Restatement, Trusts (1935) § 337, comment b.

out notice to it—one of the principal note-holders—it was put on inquiry as to the possibility of fraudulent action by the Swartzell Company. It demanded, as it should have done, that if the notes had been paid, "We have got to have the money for them." It received the reply that the money had been reinvested. But it was the duty of appellant itself to make reinvestments for the Rheem trust; not the Swartzell Company, or Edmund D. Rheem. A trustee cannot properly employ an agent to select investments for the trust, much less permit a third person to deal with trust funds and select investments without its knowledge.[9] If a trustee does entrust such funds to another for reinvestment and, through dishonesty or negligence of the other, the funds are lost, the trustee is personally liable.[10] Under such circumstances it forfeits any right it may have to compensation.[11] Thus, in the present case, whether appellant accepted the Hotel Corporation notes from the Swartzell Company, on the assumption that they represented reinvestments of trust funds already selected, or whether, on the other hand, it acted upon the instructions of the beneficiaries, and itself selected the Hotel Corporation notes in substitution for the Office Building notes, thus making itself privy with the beneficiaries, it is barred, in either event, from asking the aid of equity for the purpose of protecting its right to compensation.

Our conclusion, therefore, is that appellant does not come within the specification of our earlier decision as a "noteholder in *like situation* with other plaintiffs and interveners" and that it has failed to show any equitable reason for setting aside the decree of the lower court.

Affirmed.

[9] Abrams v. United States Fidelity & Guaranty Co., 127 Wis. 579, 106 N.W. 1091, 5 L.R.A.,N.S., 575, 115 Am.St. Rep. 1055; In re Shintaffer's Estate, 134 Kan. 101, 4 P.2d 764; Boston v. Curley, 276 Mass. 549, 562, 177 N.E. 557, 562; In re Kirkman's Estate, 143 Misc. 342, 256 N.Y.S. 495, 501, 502; 2 Scott, Trusts (1939) § 171.2; Restatement, Trusts (1935) § 171, comment h; see Forsyth v. Woods, 11 Wall.,U.S., 484, 487, 20 L. Ed. 207.

[10] Abrams v. United States Fidelity & Guaranty Co., 127 Wis. 579, 106 N.W. 1091, 5 L.R.A.,N.S., 575, 115 Am.St. Rep. 1055; Bostock v. Floyer, L.R. 1 Eq.,Eng., *26; 2 Scott, Trusts (1939) § 171.2.

[11] See Barney v. Saunders, 16 How.,U. S., 535, 542, 14 L.Ed. 1047; Ralston v. Easter, 43 App.D.C. 513, 521, 522: "It is well settled, however, that where trustees default or permit a trust estate to be wasted through their negligence, they may be held to forfeit any commissions or fees that have been paid them during their trusteeship."; Lewis v. Ingram, 10 Cir., 57 F.2d 463, 465, certiorari denied, 287 U.S. 614; 2 Scott, Trusts (1939) § 243; Restatement, Trusts (1935) § 243; Note, 110 A.L.R. 566.