# Wytheville.

HONAKER SONS v. DUFF.

July 2, 1903.

1. WILLS—*Devise for Life with Power to Appoint Remainder—Devise to Trustee for Use of A "and His Family."*—A testator, by the third clause of his will, devised to his son, Francis C. Duff, the remainder in fee in certain real estate after the death of his mother. Subsequently the son became heavily indebted, and the father added a codicil to his will, in which he says: "I hereby revoke and modify the third section of said will and testament as to my son, Francis C. Duff, this far only, that I will the said plantation I now live on, after the death of my wife . . . to Felix Gray, trustee for Francis C. Duff, and to be held by said trustee for the use and benefit of Francis C. Duff and his family during their lives, and then to be willed by said Francis C. Duff to whom he may choose, and that said trustee is to hold said property free from all present and future liabilities of said Francis C. Duff, and for the benefit of said Francis C. Duff and his family. But in all other respects the said will is my last will and testament." The will contained a residuary clause by which the testator devised and bequeathed the residue of his property to other children and grandchildren. The son had no family except his wife.

*Held:*

1. The son takes a life estate after the death of his mother, with power to appoint the remainder by his will. This express life estate is not enlarged by the power of appointment. There is no general power of absolute disposition. expressed or implied.

2. The son is the sole beneficiary of the life estate given to the trustee for the benefit of the son and his family, and his wife has no interest therein. The mention of the family was but the expression of the motive for the gift. This life estate is liable for the son's debts.

Appeal from a decree of the Circuit Court of Washington county, pronounced October 10, 1901, dismissing a petition filed by appellants in two chancery suits pending in said court for the purpose of subjecting the real estate of the appellee, F. C. Duff, to the payment of the liens thereon.

*Reversed.*

The chief matter of controversy in this case was the proper construction of the will and codicils of Thomas J. Duff. The following are copies thereof:

"I, Thomas J. Duff, of the county of Washington, and State of Virginia, do publish and declare this to be my last will and testament.

"First: I direct that all my just debts be fully paid.

"Second: I devise to my wife, Elizabeth S. Duff, all my property, real and personal, during her natural life (and whereas I have this day deeded to my daughter, Nancy M. Catron, a tract of land heretofore purchased by me from her husband, Francis Catron, in full of what I intended to devise her of my estate now, it is understood, that my wife, Eliazbeth, by this instrument takes, nor is entitled to any part of that land under my devise in this second clause to her).

"Thirdly: I devise to my son, Frances C. Duff, the plantation on which I now live after the death of my wife, Elizabeth, also the part of the tract I still own, which I purchased from Newton Duff and Stephen B. Duff, executor of Samuel C. Duff, with like limitation and restriction as I have applied to my devise to him in regard to the home place. For description see deed of Newton and Stephen B. Duff exr., &c., of record in the clerk's office of the County Court of Washington county.

"Fourthly: I, having by deed bearing date this 11th day of February, 1873, deeded and conveyed to my daughter, Nancy M. Catron, a tract of land lying in this county and described, and reference for description had in said deed. Now I wish it

distinctly understood that this is in full of what I allot to her as her share of my estate, real and personal.

"Fifthly: After the death of my beloved wife, Elizabeth, I devise and direct that the remainder of my estate, both real and personal, shall be equally divided between my daughter and grandchildren—namely, the children of Sarah Jane Berry, deceased, except Nancy M. Catron (for whom I have already provided by the fourth clause of my will), three in number, they taking the part that their mother would have taken under this clause of my will if she had then been living. This clause, however, is subject to this condition and provision that my two daughters that are single at this time, to-wit: Josephine Cassandra and Arminia Florence are to have $150.00 each out of the residuum of my estate after the death of my wife before any other daughters and grandchildren herein provided for by this fifth clause take anything. My intention being that, that amount being paid to the two last named; that the balance or remainder shall be divided and employed as above written.

"Sixthly: I hereby constitute and appoint my beloved wife, Elizabeth, and my son, Francis C. Duff, executrix and executor of this my last will and testament. In witness whereof, I have this 11th day of February, 1873, signed my name and affixed my seal in the presence of,

"THOMAS J. DUFF (Seal)."

"Acknowledged before us by the testator in his presence and the presence of each other, at his request.

"JOSEPH T. CAMPBELL,<br>"BEVERLEY R. JOHNSTON,<br>"JOHN A. BUCHANAN."

"I, Thomas J. Duff, make this codicil to the foregoing (my last will and testament), since said will was made my said daughters, Josephine Casandra and Armenia Florence, to whom I bequeathed $150 each by the fifth clause of my will, have mar-

ried, and I have paid them more than said bequests. I therefore revoke and annul so much of said will as bequeaths said sum of $150 to each of them, but in all other respects the same is my last will and testament.

In witness whereof, I affix my hand and seal, this 4th day of March, A. D., 1879.

"THOMAS J. DUFF (Seal)."

"Acknowledged before us by the testator, in his presence, in the presence of each other, and at his request, we witness the above codicil.

"JOHN A. BUCHANAN,
"S. G. KELLER."

"I, Thomas J. Duff, make this, my second codicil to the foregoing will and codicil and testament.

"I hereby revoke and modify the third section of said will and testament as to my son, Francis C. Duff, this far only, that I will the said plantation I now live on, after death, of my wife, and part of plantation I purchased from Newton and Stephen Duff, to Felix Gray, trustee for Francis C. Duff, and to be held by said trustee for the use and benefit of Francis C. Duff and his family during their lives, and then to be willed by said Francis C. Duff to whom he may choose, and that said trustee is to hold said property free from all present and future liabilities of said Francis C. Duff and for benefit of said Francis C. Duff and his family; but in all other respects, the said will is my last will and testament.

"In witness whereof, I affix my hand and seal, this 19th April, 1888.

"THOMAS J. DUFF (Seal)."

"Acknowledged in our presence, and in presence of each other, and at request of testator.

"JOHN C. SUMMERS,
"MARY E. WRIGHT."

*Honaker & Hutton*, for the appellants.

*J. H. Fulton* and *L. P. Summers*, for the appellees.

KEITH, P., delivered the opinion of the court.

The decree appealed from involved the construction of the will of Thomas J. Duff, dated February 11, 1873, the third clause of which is as follows:

"I devise to my son, Francis C. Duff, the plantation on which I now live after the death of my wife, Elizabeth, also the part of the tract I still own, which I purchased from Newton Duff and Stephen B. Duff, executor of Samuel C. Duff, with like limitation and restriction as I have applied to my devise to him in regard to the home place."

After the execution of this will, Francis C. Duff became indebted, and the testator made a codicil to his will, dated April 19, 1888, which is as follows:

"I hereby revoke and modify the third section of my will and testament as to my son, Francis C. Duff, this far only, that I will the said plantation I now live on, after death, of my wife, and part of plantation I purchased from Newton and Stephen Duff, to Felix Gray, trustee for Francis C. Duff, and to be held by said trustee for the use and benefit of Francis C. Duff and his family during their lives, and then to be willed by said Francis C. Duff to whom he may choose, and that said trustee is to hold said property free from all present and future liabilities of said Francis C. Duff and for benefit of said Francis C. Duff and his family; but in all other respects, the said will is my last will and testament."

It will be seen that by the original will Francis C. Duff took a remainder in fee after the death of his mother, and we shall now proceed to inquire as to the extent of his interest under the codicil.

His creditors claim that under this codicil Francis C. Duff

takes a fee simple, which they can subject to payment of the debts due ·to them, while the contention on the other hand is that he has a joint interest with his family in the use of the property mentioned in the codicil, which is not liable to his creditors.

In *May* v. *Joynes*, 20 Gratt. 692, it was held that upon a devise to a wife of " 'my whole estate, real and personal, and especially all real estate which I may hereafter acquire, to have during her life, but with full power to make sale of any part of the said estate and to convey absolute title to the purchasers; and use the purchase money for investment or any purpose that she pleases; with only this restriction, that whatever remains at her death, after paying any debts she may owe, or any legacies that she may leave, be divided as follows.' There are then limitations to his children and grandchildren. The wife takes a fee simple in the real, and an absolute property in the personal, estate; and the limitation over of whatever remains at her death is inconsistent with and repugnant to such fee simple and absolute property in said real and personal estate, and fails for uncertainty."

It is to be regretted that there is no opinion extant in this case, so that we must look to the arguments of counsel, which are fully· reported, for the reasons and authorities controlling the court in its decree.

A great number of cases are reviewed, including many of those relied upon in the argument here. It was pressed upon the court that under the language of the will the widow might sell, give, or waste the whole capital, as her absolute property, and no court could interfere to prevent her; that when such an unrestrained power has been given, and an absolute interest has vested in the devisee, there can be no valid limitation over to other persons; and this view was adopted by the court in its decree.

*May* v. *Joynes* has frequently been cited, and, while some-.

times questioned, has never been overruled, and was followed by this court in *Farish* v. *Wayman*, 91 Va. 430, 21 S. E. 810, where the devise was to trustees for the daughter "during her natural life, and should she die and leave no child, in that case the property devised above or what remained of the same I give to my sister." Judge Harrison, delivering the opinion of the court, says:

"It cannot longer be doubted that the law is settled that an estate for life, coupled with the absolute power of alienation, either express or implied, comprehends everything, and the devisee takes the fee."

In a note upon that case in 1 Va. Law Reg., at page 219, Judge Burks says: "It cannot be doubted that, though property is devised or bequeathed to one for life, even in the most express terms, yet if, by other terms in the same instrument, it is manifest that the devisee or legatee is invested with absolute power to dispose of the subject at his will and pleasure, he is not a mere life tenant, but absolute owner, for there can be no better definition of absolute ownership than absolute dominion.

"In such case the expressed life estate is enlarged into an absolute estate by the intention of the testator, deduced from the instrument as a whole. Where, however, an estate for life is given in express terms, the language in other parts of the will relied on to enlarge that into an absolute estate ought to be very clear, indeed, to have that effect."

This subject is fully discussed in a very learned opinion by Judge Green in *Milhollen's Adm'r* v. *Rice*, 13 W. Va. 510, where, after an exhaustive review of the authorities, English and American, it is said: "It is settled that if a testator gives property to a devisee or legatee, to use or dispose of at his pleasure (that is, to consume or spend, sell or give away, at his pleasure), such devisee or legatee has the fee simple or absolute property, even though his interest in it be called by the will a

'life estate,' and there be a provision in the will whereby what may remain of the property at the death of the devisee or legatee is given to another person."

In *Rubey* v. *Barnett* (Mo. Sup.), 49 Am. Dec. 112, it is said: "When an express estate for life is given by will, and a power of disposition is afterwards conferred, the devisee takes but a life estate, with power of disposition; and, if no disposition is made, the reservation will go to the heirs of the devisor. But if there is no previous devise of the life estate, but a simple power of disposition is given, then the devisee takes an absolute estate; and this rule applies to both real and personal estate."

In 4 Kent's Com. 319, the doctrine is stated thus: "A devise of an estate generally or indefinitely, with power of disposition over it, carries a fee. But when the estate is given for life only, the devisee takes only an estate for life, though a power of disposition or to appoint the fee by deed or will be annexed, unless there should be some manifest general intent of the testator, which would be defeated by adhering to this particular intent. And the rule is more flexible when a specific mode of exercising the power is in point."

In 3 Va. Law. Reg., at page 65, there is an article by a writer of acknowledged authority, which, after stating that the cases are difficult to reconcile on any other principle than that of giving free play to the testator's intention, says the subject may be thus summarized:

(1) "When an express estate for life is given, and a power of disposition over the reversion is annexed, the devisee for life will not take an estate in fee, notwithstanding the power to dispose of the inheritance. The express estate for life negatives the intention to give the fee simple, and converts those words into words of mere power, which, standing alone, would have been construed to carry an interest."

(2) "When a life estate is given the devisee, with power of disposition, the devisee is held to take a fee simple, if otherwise

the manifest intention of the will would be defeated." This is stated to be by way of exception to the first general rule stated, and, as resting on intention, must depend on the construction of the particular will. "Thus, where the limitation is of a life estate, but there is given full power of disposition over the fee by deed or will, without limitation or restriction as to the time, mode, or purpose of its exercise, the devisee may be held to take, not the mere life estate expressly given, but the fee itself, by implication," which is the doctrine of *May* v. *Joynes, supra.*

We have quoted freely from this article, not only on account of its intrinsic merit, but because the statement that where there is a limitation of the life estate, with full power of disposition over the fee "by deed or by will," that the devisee may be held to take, not the mere life estate, but the fee by implication, was relied upon in argument by counsel for appellants as authority to show that in this case Francis C. Duff took an estate in fee.

We have, however, the best authority for the statement that the phrase "by deed or by will" is not to be taken distributively, but as referring to the full power of disposition by both deed and will, as together constituting the full power of disposition over the fee, which, if conferred without limitation or restriction as to time, mode, or purpose of its exercise, would serve to enlarge the life estate expressly given into a fee by implication.

Where an estate is given to a person generally, or indefinitely as contrasted with a gift of life estate, as to A., with power of disposition, it is held to amount to a fee simple. *Roberts* v. *Lewis,* 153 U. S. 367, 14 Sup. Ct. 945, 38 L. Ed. 747. But even in this case, if a life estate only is plainly intended by the will, a fee simple in land, or an absolute interest in personalty, will not be construed to pass to the first taker, and a limitation over will be good. *Smith* v. *Bell,* 6 Pet. 68, 8 L. Ed. 322.

The authorities which we have cited, including the valuable monograph from 3 Va. Law Register, *supra,* clearly establish

the distinction between a gift for life, with a power of disposition added, and a gift to one indefinitely, with the power of disposition by deed or will.

In *Burwell's Ex'rs* v. *Anderson*, 3 Leigh, 356, Judge Tucker says, "that a devise to A., to dispose at his will and pleasure, gives a fee simple; but a devise to A. for life, and after her decease she to give the same to whom she will, passes but a life estate, with a power. Where such inconsistent life estate is given, the fees does not pass, for the whole matter rests upon intention."

We have seen that by the original will in this case the testator gave his son an estate in fee after the termination of the life estate to testator's wife, and that, for reasons satisfactory to himself, he revoked that section of his will, and made the codicil under consideration, by which Francis C. Duff is given an express estate for life, with a power of appointment by will, so that, so far from its defeating the manifest intention of the will to hold that the devisee takes a life estate, only, and not a fee simple, it would be in derogation of the apparent intention of the will to enlarge the life estate, which is expressly given, into a fee simple by implication.

Up to this point then, the intention of the testator and the rules of law are in entire harmony, for here there is no gift to the son generally or indefinitely with a full power of disposition over the fee without limitation or restriction as to the time, mode, or purpose of its exercise, but of a life estate with a power of appointment by will.

The next question to be considered is whether the devise of the life estate to a trustee for Francis C. Duff, to be held by said trustee for the use and benefit of Francis C. Duff and family during their lives, and then to be willed by Francis C. Duff to whom he may choose, and that the trustee is to hold the property free from all present and future liabilities of said Francis C. Duff and his family, made Francis C. Duff the sole beneficiary, or whether he takes jointly with his family.

Francis C. Duff has a wife, and no other family, and the question then resolves itself into this: Does the trustee hold the property devised for the sole benefit of Francis C. Duff, or for the joint benefit of Francis C. Duff and his wife during their lives?

We must revert again to the fact that by the original will Francis C. Duff would have taken what we will call, for brevity's sake, an estate in fee simple, and that the apparent reason for the execution of the codicil was that Francis C. Duff had become heavily indebted. The purpose of the testator then, clearly, was, by the codicil, to give to his son the beneficial enjoyment of the property devised to him, shielded from the claims of his creditors; but here we have an intent to which the court cannot give effect, because it is contrary to the law of the land.

In *Hutchinson* v. *Maxwell*, 100 Va. 169, 40 S. E. 655, this court held that "the reasoning of the cases which uphold spendthrift trusts is unsatisfactory, and, as it seems to us, at war with well-settled principles of law as to the incidents of property, whilst the English courts of chancery, and the American cases which follow them, even if our statute did not make a debtor's equitable property liable for his debts to the same extent as if he were the legal owner, seem to us to be sustained by the better reason, and in furtherance of a wise public policy. Whatever right, whether legal or equitable, a person *sui juris* has in property, ought to be, and, we think, is, liable for his debts, except so far as it is exempt therefrom by statute. Whatever rights of property the *cestui que trust* can demand from his trustees, his creditors ought to have the right to subject to the payment of their debts, unless his rights are so connected or blended with the rights of others that they cannot be subjected without prejudice to the latter's rights."

Whatever right, therefore, Francis C. Duff takes under this will, may be subjected by his creditors to the payment of his

debts, for we think it plain that it bears no similitude to the
case of *Nickell* v. *Handly*, 10 Gratt. 336, where there was a
gift of property of small value to a trustee for the support of a
woman and her five children, and the court held that, under the
circumstances of that case, the interest of the mother could not
be subjected to her debts; that she and her children were not
entitled to have set apart for each of them an equal share of
the trust property or its annual products, but it was to be held
by the trustee, and the annual products applied to the support
of the wife and children according to the necessities of each;
that the creditors would only be entitled to the ratable portion
of the wife of any surplus of the annual products of the trust
subject, after providing for the support of herself and family;
and that, as there was no such surplus shown to exist, the bill
was properly dismissed.

In the case before us the devise is either for the sole benefit
of Francis C. Duff, or for that of himself and wife, and in the
latter event his share could be set apart without injury to the
interest of his co-tenant.

There is a numerous class of cases, beginning with *Wallace*
v. *Dold's Ex'rs*, 3 Leigh, 258, which hold that a grant or gift
to a woman and her children, or to a trustee for the benefit of
herself and children, passes title to the mother, and that the
mention of the word "children" in the deed or will merely in-
dicates the motive for the conveyance or gift, without investing
them with any interest therein. *Nye* v. *Lovitt*, 92 Va. 710, 24
S. E. 345.

The most recent of these cases is *Tyack* v. *Berkeley*, 100 Va.
296, 40 S. E. 904, where many of these authorities are reviewed,
and the doctrine is reaffirmed.

In *Fitzpatrick* v. *Fitzpatrick*, 100 Va. 552, 42 S. E. 306, it
was said, however, that a gift to a wife and children, without
more, vests a joint estate in the wife and children in equal
portions.

All the cases belonging to the class now under consideration have been a gift, grant, or devise for the benefit of wife and children, or daughter and children; but the same rule of construction would apply to a grant or devise to a son and his children, or a son and his family, and the same tests would with propriety be resorted to in order to ascertain, in the case of a will, whether the testator intended by the addition of the words "and family" to a gift to his son to embrace the family as joint objects, with the son, of his bounty.

It will be observed that the gift is to the trustee for Francis C. Duff, and to be held by such trustee for the use and benefit of Francis C. Duff and his family during their lives, and then to be willed by Francis C. Duff to whom he may choose. To what does this power of appointment attach? The language of the will vests the property in the trustee, and Francis C. Duff is clothed with the power to dispose by will of the whole of it. The will of Francis C. Duff must speak at his death, and, if he may then will the entire estate held by the trustee, what becomes of the interest of his family? The trustee is directed to hold said property free from all present and future liabilities of Francis C. Duff. He is directed to hold not merely the interest as trustee of Francis C. Duff, but the whole of the property which passes to him under this devise. If the testator had not supposed that it vested for the benefit of Francis C. Duff, where would be the propriety in declaring that it should be held free from his liabilities? The interest of his wife, if any, could not be subjected to his debts, save by her voluntary act; and the language of the will, expressly exempting, not the interest of Francis C. Duff, but the whole of the estate which passes to the trustee, free from liability for his debts, would seem to be a circumstance pointing to the intent of the testator to make Francis C. Duff the sole object of his bounty, far more persuasive than the circumstances relied upon in *Wallace* v. *Dold's Ex'rs* and *Nye* v. *Lovitt, supra*; in *Stinson* v. *Day*, 1 Rob. 435;

in *Leake* v. *Benson*, 29 Gratt. 153; in *Bain* v. *Buff's Adm'r*, 76 Va. 371; in *Seibel* v. *Rapp*, 85 Va. 28, 6 S. E. 478, and in. *Stace* v. *Bumgardner*, 89 Va. 418, 16 S. E. 252, as vesting the entire estate in the wife or daughter, to the exclusion of her children or family.

When we reflect that Francis C. Duff was the son of the testator; that his family consisted of himself and wife; that there were no children, who, as being the grandchildren of the testator might with strong reason have been deemed the direct objects of his bounty; when we observe that the gift is to a trustee "for Francis C. Duff," his name being followed by a comma; then the words, to be held by "said trustee" (that is to say, the trustee for Francis C. Duff) for the use of Francis C. Duff and his family during their lives; that Francis is given the power to dispose of the whole of it by will to whom he may choose; that it is shielded from liability for the debts of Francis C. Duff; that the language employed for that purpose applies not to any share or part of it, not to the interest in it of Francis C. Duff, but to the whole of it, which would have been not only unnecessary; but is misleading, if he was but a joint tenant for life with his wife; that if the wife, on the other hand, was to be deemed jointly interested in the whole estate, her share was left in a form in which it could be subjected to her debts, thus presenting ·the unusual situation of property being given to a man and a woman jointly, with immunity from the claims of creditors with respect to the interest of the man, while the bounty to the woman was left at the mercy of her improvidence and his importunity—when all these circumstances are considered, we are forced to the conclusion that the son was the sole object of the testator's bounty. His idea doubtless was that the devise to the son, free from the demands of his creditors, secured a support to him for life, and that, if his wife survived, the son would provide for her by his will in execution of the power of appointment with which he was clothed. Had

the devise been to "Felix Gray, in trust for Francis C. Duff and his family," without more, the case would have been controlled by that line of decisions of which *Fitzpatrick* v. *Fitzpatrick*, *supra*, is the most recent example, and the wife of Francis would have taken a joint estate with him; but, looking to the situation of the testator and the son, we are satisfied that the son was the sole object of the testator's bounty.

It follows that the decree must be reversed, and the cause remanded to the Circuit Court, to be proceeded with in accordance with the views expressed in this opinion.