# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## MAUD KENT ROWLEY v. AMERICAN TRUST COMPANY, AND AMERICAN TRUST COMPANY TRUSTEE.

### March 18, 1926.

1. WILLS—*Construction—Spendthrift Trusts—Parol Evidence to Show that a Trust was a Spendthrift Trust—Case at Bar.*—In the instant case, an action by plaintiff against defendant to recover a sum of money alleged to be due plaintiff as interest on a trust fund of which defendant was trustee, defendant asserted that the trust had been dissolved by an agreement of all the beneficiaries. Plaintiff sought to introduce parol evidence to prove that testatrix intended to create a sort of spendthrift trust for her daughter, the plaintiff. The language of the clause of the will creating the trust was perfectly plain and without ambiguity. The language suggested no element of a spendthrift trust. It gave to the plaintiff in the clearest sort of way a vested life estate with absolute and unfettered control of the income for her life.

   *Held:* That the parol evidence was properly excluded, as in such case no extrinsic evidence was permissible to aid in the construction of the will.

2. TRUSTS AND TRUSTEES—*Termination of the Trust—Agreement of Life Tenant and Remaindermen—Transfer of Estate by the Life Tenant to the Remaindermen—Case at Bar.*—The owner of an equitable life estate and the remaindermen, all living and *sui juris*, where there are no restrictions upon alienation whatever in the instrument creating it, can dissolve the trust, and the life tenant can transfer the estate to the remaindermen.

3. TRUSTS AND TRUSTEES—*Termination of Trusts—Consent of Court of Chancery.*—A trust of a sum of money for life with remainder over on the death of the life tenant may be terminated without the consent of a court of chancery where all the beneficiaries are *sui juris* and enter into an agreement to terminate the trust and pay over the sum to one of the remaindermen.

4. TRUSTS AND TRUSTEES—*Powers of Trustee—What a Court of Equity would Decree.*—A trustee may safely do that, without a decree of court, which the court on a case would order or decree him to do.

5. TRUSTS AND TRUSTEES—*Conveyance by Beneficiaries—Refusal of Trustee to Convey.*—Where the persons entitled to the whole beneficial interest are *in esse* and *sui juris*, it is one of the first duties of a trustee

to execute such conveyances of the legal estate as the *cestuis que trustent* shall direct, and the trustee will be visited with costs if he should refuse to convey with no good reason, and the beneficiaries should be driven thereby to file a bill to compel a conveyance.

6. Trusts and Trustees—*Right of Purchaser from Beneficiary.*—Where the parties in whom the absolute beneficial interest in the property was vested have disposed of the whole of their equitable estate to a purchaser, the purchaser is entitled to require a conveyance of the legal estate from the trustees without the concurrence of the vendors.

7. Trusts and Trustees—*Whether Equitable Life Estate is Inalienable.*—An equitable life estate is not inalienable. On the contrary, prior to the spendthrift trust act, alienability and liability for debts were inseparable incidents of both legal and equitable life estates.

8. Equitable Life Estates—*Alienation—Liability for Debts.*—The rights of alienation and liability for debts are inseparable incidents of a life estate, whether limited by way of trust, or otherwise, except where there is a termination or limitation on seizure by creditors.

9. Separate Property of Married Women—*Equitable Life Estate of Married Woman Distinguished from Legal and Equitable Life Estate.*— The separate equitable estate of a married woman is a creature of equity, controlled by entirely different rules from those governing legal life estates and equitable life estates.

10. Trusts and Trustees—*Termination of Trusts—Agreement of the Beneficiary—Case at Bar.*—A testatrix bequeathed to a trustee $10,000.00 in trust for her daughter for life with remainder over to two other beneficiaries. The daughter joined with the remaindermen in a solemn contract under seal to terminate the trust, and apparently assigned all her interest to one of the remaindermen, all of which she had the right to do even over the protest and objection of the trustee. The remaindermen lost the $10,000.00.

*Held:* That the daughter could not maintain her action against the trustee for the income of the fund.

Error to a judgment of the Law and Equity Court of city of Richmond, in a proceeding by motion for a judgment for money. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*D. C. O'Flaherty,* for the plaintiff in error.

*Daniel Crinnan* and *R. L. Montague,* for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

This is an action instituted by Maud Kent Rowley in the Law and Equity Court of the city of Richmond, against American Trust Company and American Trust Company, trustee, to recover $1,200 with interest thereon, alleged to be due plaintiff as interest on a trust fund of $10,000, which defendant is alleged to have held in trust, as will hereinafter appear, for the benefit of plaintiff during her lifetime.

There was a trial by jury and a verdict and judgment for the defendant. From that judgment a writ of error was allowed to this court.

The pertinent facts are as follows: By her will, bearing date March 6, 1918, and admitted to probate July 8, 1920, Alice Leavitt Kent, mother of the plaintiff, by the fifth clause of her will provided as follows:

"I give and bequeath to the American Trust Company of Richmond, Virginia, the sum of ten thousand dollars ($10,000.00) in trust to invest and reinvest said sum and to pay all the net income therefrom semiannually to my daughter, Maud Kent Rowley, for life, and upon her death to divide the principal of said ten thousand dollars ($10,000.00) equally between my daughter, Alice Tinsley Hall, and my grandson, Charles Edward Dickinson, or to pay over said ten thousand dollars ($10,000.00) to the survivor."

By the sixth clause of her will the testatrix gave all the residue of her estate to Maud Kent Rowley absolutely.

The American Trust Company, hereinafter referred to as defendant company, was made executor of the will, as well as trustee under the fifth clause thereof, and as trustee invested the $10,000 and paid Maud Kent Rowley, hereinafter referred to as plain-

tiff, the interest until November, 1922, when plaintiff, her sister, Alice Tinsley Hall, and Charles E. Dickinson, the remaindermen in fee under the fifth clause of the will, addressed and delivered to the defendant company the following paper:

"In Re Estate of Alice Leavitt Kent, deceased.

"To American Trust Company, as executor and trustee of the last will and testatment of Alice Leavitt Kent, deceased, which was proven in the Chancery Court of the city of Richmond, Virginia, on July 8, 1920.

"We, the undersigned, Alice Tinsley Hall, Maud Kent Rowley, and Charles Edward Dickinson, legatees named in said will, do hereby inform you as follows with regard to the trust established by the fifth clause of said will, whereby the sum of $10,000.00 was directed to be paid to American Trust Company, as trustee, to pay the net income from said fund to Maud Kent Rowley for life, and at her death to pay and deliver the said fund to Alice Tinsley Hall and Charles Edward Dickinson, or the survivor of them, viz:

"We have agreed and do hereby agree to dissolve the said trust and to turn over the whole of the trust funds in your hands held by you under said trusts to Charles Edward Dickinson, and we therefore do hereby authorize and direct you to pay, transfer, and deliver to said Charles Edward Dickinson, the entire amount of the securities held by you for the trusts aforesaid, and we do hereby each of us covenant and agree with you that the receipt of said Charles Edward Dickinson for said trust funds shall be a valid and sufficient receipt to you therefor, and a release to you of all liability to any of us on account of the $10,000.00 legacy named in the fifth clause of said will.

"Witness our hands and seals on this 15th day of November, 1922, at Richmond, Va.

"ALICE TINSLEY HALL,          (Seal)
"MAUD KENT ROWLEY,          (Seal)
"CHARLES E. DICKINSON,          (Seal)."

This paper was signed by the parties, sealed and acknowledged before a notary public, and on the following day Charles Edward Dickinson, as provided in the writing, executed and delivered to the defendant company his receipt as follows:

"November 16, 1922.
"Received of American Trust Company, executor and trustee of the will of Alice Leavitt Kent, deceased, full and complete payment and settlement of the $10,000.00 trust fund mentioned in this agreement and I do hereby release said executor and trustee from all liability thereunder.
"CHARLES EDWARD DICKINSON."

The sum of $10,000.00 was paid over to Dickinson accordingly, and was used by him in an enterprise in which he was interested. The business failed and the $10,000.00 was lost.

The action instituted by the plaintiff is to recover of the defendant company, as trustee, interest on this fund since the execution of the paper of November 15, 1922.

All the parties, beneficiaries under the fifth clause of the will, as will be observed, signed this paper, and all were *sui juris* at the time.

It will be noted that the clearly expressed objects of the paper were to dissolve the trust created by the fifth clause of the will of Alice Leavitt Kent, and to

·authorize the payment of the $10,000 over to Charles Edward Dickinson. The plaintiff now contends that the trust was not legally dissolved and that she could not legally assign or dispose of the equitable life estate bequeathed her under the fifth clause of her mother's will, and that the defendant company, trustee, is liable to her for interest on the $10,000 during her lifetime.

[1] There are two assignments of error. The first relates to the action of the trial court in refusing to admit certain oral evidence, the tendency of which was to prove that the testatrix intended to create a :sort of spendthrift trust for her daughter, the plaintiff here, inalienable in character, and in this connection ·evidence was tendered, the object of which was to show that plaintiff was of a generous, improvident disposition, did not know the value of money and was in debt, and could not hold property in her own name.

This evidence was properly excluded. The language ·of the fifth clause of the will is perfectly plain and with- ·out ambiguity. Even if spendthrift trusts had been legal at the time of the writing of the will, there is no ·element of a spendthrift trust suggested by the language used. It gave to the plaintiff in the clearest sort of way a vested life estate, with absolute and unfettered ·control of the income for her life, from the sum of $10,- 000, which sum was to be held in trust during her life and then the principal paid over, $5,000 to Alice Tinsley Hall and $5,000 to Charles Edward Dickinson, or the whole amount to the survivor.

In such a case no extrinsic evidence was permissible to aid in the construction. *Senger* v. *Senger*, 81 Va. ·677; 2 Minor's Inst. (4th ed.) 1052; *Tibbs* v. *Duval*, 17 Gratt. (58 Va.) 349; *Nichols* v. *Nichols*, 126 Va. 49, 100 S. E. 826; *Hurt* v. *Hurt*, 121 Va. 413, 93 S. E. ·672.

[2] The second assignment of error, while it raises a question as to the correctness of the instruction given by the court, really involves the question as to whether the owner of an equitable life estate and the remaindermen, all living and *sui juris*, where there are no restrictions upon alienation whatever in the instrument creating it, can dissolve the trust and the life tenant transfer the estate to the remaindermen.

That was identically what was done in the instant case, and that she had a right to do this was the interpretation put upon the fifth clause of her mother's will by the plaintiff herself, as evidenced by her acts. She seems only to have seen the matter in another light after, through her voluntary act, the principal of the estate was lost. It is contended now, however, that the trust was indissoluble, that the trustee should not have permitted the termination of the trust, and that it is now, and will be, during the life of the plaintiff, responsible to her for the interest.

We do not think so. This very question was set at rest in the suit of *Thom* v. *Thom*, 95 Va. 413, 28 S. E. 583. In that case there was a trust estate for three life tenants with remainder to the survivor and survivors of them for life, with remainder in fee at the death of the last survivor to a nephew of the testatrix. All of the beneficiaries were *sui juris*, and this court held, in a suit in which the trustee sought to prevent the termination of the trust by a sale by the remaindermen in fee to the life tenants, that the remaindermen in fee had a right to sell, that the trust was thereby terminated, and that the trustee was bound to deliver the estate to the purchasers.

There is no difference in principle between that case and the case under review. The only distinction between the two cases is that in the *Thom Case* the life

estate was merged into the fee in the hands of the life tenants, thus terminating the trust, while in the instant case the life estate was merged into the fee in the hands of the remainderman in fee, thereby terminating the trust estate.

[4] It is contended that such a trust cannot be terminated without the consent of a court of chancery. In the case of *Thom* v. *Thom, supra,* the court compelled the trustee to comply with the terms of an agreement among the parties interested, to terminate the trust, made out of court.

[4] In Perry on Trusts (6th ed.), section 476, it is said: "And so it is a rule of equity that a trustee may safely do that, without a decree of court, which the court on a case would order or decree him to do."

[5, 6] In Hill on Trustees (2d Am. ed. by Wharton), star-page 278, it is said: "Where the persons entitled to the whole beneficial interest are *in esse* and *sui juris,* it is one of the first duties of a trustee to execute such conveyances of the legal estate as the *cestuis que trustent* shall direct;" and that the trustee will be visited with costs if he should refuse to convey with no good reason, and the beneficiaries should be driven thereby to file a bill to compel a conveyance; and at star-page 279 the author says: "Where the parties in whom the absolute beneficial interest in the property was vested have disposed of the whole of their equitable estate to a purchaser, the purchaser is entitled to require a conveyance of the legal estate from the trustees without the concurrence of the vendors."

In Lewin on Trusts (1st Am. from 8th Eng. ed. by Flint), star-page 684, it is said: "The *cestui que trust* may call upon the trustee to execute conveyances of the legal estate as the *cestui que trust* directs. If the trustee refuse to comply and the *cestui que trust* in-

stitutes proceedings to compel him, the trustee will be visited with costs unless there be some reasonable ground for his refusal, or he acted *bona fide* under advice of counsel. * * * But a trustee has a right to be satisfied by the fullest evidence that the party requiring the conveyance is the exclusive *cestui que trust.*"

See also the remarks made by Vice-Chancellor Sir James Bacon, in *Anson* v. *Potter* (1879), 13 Chy. Div. 141 with regard to trustees upon whom the beneficiaries of the trust, all *sui juris* and with vested interests, called for a surrender of their estate and were refused for no good cause; and the beneficiaries for that reason were compelled to resort to the court to obtain a conveyance.

"Where all the actual or possible *cestuis que trustent* are in existence and *sui juris*, they may together put an end to the trust in whole or in part, or discharge the trustee therefrom." The Earl of Halsbury's Laws of England, Vol. 28, p. 128, citing *inter alia, Anson* v. *Potter* (1879), 13 Chy. Div. 141.

This opinion might well end here, as we think the case of *Thom* v. *Thom, supra,* practically settled all of the questions really involved herein, but as the question of the right of the plaintiff, under the circumstances of this case, to alienate her life estate has been questioned and fully argued in the briefs, a short discussion of this question is not inappropriate.

[7] It is to be remembered, of course, that this is not a case in which the testatrix attempted to put any restrictions of any sort upon the life tenant's right to alien her life interest. If Mrs. Rowley's life estate is inalienable, it is because an equitable life estate is in and of itself inalienable.

Not only is this not the law in Virginia, but prior

384 Rowley v. American Trust Co., 144 Va. 375.

to the "spendthrift trust" act alienability and liability for debts were inseparable incidents of both legal and equitable life estates.

As was said by Judge Buchanan in *Hutchinson* v. *Maxwell*, 100 Va. 176, 40 S. E. 655, 57 L. R. A. 384, 93 Am. St. Rep. 944: "A life estate is alienable whether the estate is in land or in personal property, and, although there is authority to the contrary, general restraints against the alienation of such an estate are void." 21 C. J., p. 940.

And Professor Minor, in discussing restraints upon alienation of life estates and estates for years, says: "There can be no restraints upon such an estate except in so far as may be necessary *to protect* the *interest* of a *reversioner or remainderman*." (Italics ours.) Such rights are not involved here as they are settled and disposed of by the contract above quoted.

Mr. Minor further says: "It is submitted that the true principle (leaving out of view the distinction between a condition and a limitation), is, as stated above, that a condition restrictive of alienation is always to be regarded as adverse to public policy, and for that reason to be strictly construed, and when it is not needful in order to protect the reversionary interests of the grantor, or of the person from whom the estate or interests proceeds, it is in general void." 1 Minor on Real Property, section 588, p. 665.

[8] Again, in *Hutchinson* v. *Maxwell, supra,* Judge Buchanan says: "It is well settled in this country and in England, from which country we derive the principles of our jurisprudence, that a gift or grant of a beneficial estate, in fee or absolutely, whether legal or equitable, has certain legal incidents of which the estate cannot be divested, and all conditions adopted for that purpose are necessarily repugnant and void.

Among these incidents are the donee's or grantee's power of alienating such estate and its liability for his debts." (Citing authorities.) And at p. 176 (40 S. E. 655), the judge says: "It is well settled in England that the rights of alienation and liability for debts are inseparable incidents of a life estate, whether limited by way of trust, or otherwise, except where there is a termination or limitation on seizure by creditors;" and continuing his argument at some length, Judge Buchanan approved the English view as to equitable life estates as a correct statement of the law for Virginia. *Honaker* v. *Duff,* 101 Va. 675, 44 S. E. 900; *Petty* v. *Moore's Brook San.,* 110 Va. 818, 67 S. E. 355, 27 L. R. A. (N. S.) 800, 19 Ann. Cas. 271.

In Perry on Trusts, section 386a, the learned author says: "This doctrine that the incidents of a legal title attach to an absolute equitable interest, and that an equitable estate for life in any other than a married woman carries with it the power of alienation by the *cestui que trust,* and may be taken for the payment of his debts, and that no provision which does not operate to terminate his interest can protect it from the claims of creditors, is the well-settled law of England, and has been approved and applied in many *dicta* and decisions in the United States." Citing, *inter alia, Nickell* v. *Handley,* 10 Gratt. (51 Va.) 336, also three other Virginia cases, *Hutchinson* v. *Maxwell,* 100 Va. 169, 40 S. E. 655, 57 L. R. A. 384, 93 Am. St. Rep. 944, *Honaker* v. *Duff,* 101 Va. 675, 44 S. E. 900, and *Young* v. *Easley,* 94 Va. 193, 26 S. E. 401.

[9] No authority is cited by counsel for plaintiff in opposition to any of the foregoing authorities. References and quotations are made from cases involving the separate equitable estate of married women. Such an estate is a creature of equity, controlled by

entirely different rules from those governing legal life estates and equitable life estates.   The distinction is clearly pointed out in the above quotation from Perry on Trusts, and is discussed and distinguished in the case of *Hutchinson* v. *Maxwell, supra.*

In *Hutchinson* v. *Maxwell,* a very careful effort was made to prevent the alienation of the equitable life estate, but this court held that such restrictions were against public policy and therefore void.   In the instant case, there was no effort to in any way restrict alienation.

[10] In this state of facts, all the parties being *sui juris,* Mrs. Rowley joined with the remaindermen in a solemn contract under seal to terminate the trust, and apparently assigned all her interests to the remainderman, Charles E. Dickinson, all of which she had a right to do, even over the protest and objection of the trustee.   That she loses the income from the estate is regrettable, but she is the architect of her own misfortune for which courts may extend sympathy but they cannot afford relief.

Our opinion therefore is to affirm the judgment of the trial court.

*Affirmed.*