ESTATE OF WILLIAM EDWIN HANKINS, GEORGE M. HANKINS, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Hankins v. Commissioner
Docket No. 8448-78.
United States Tax Court
T.C. Memo 1981-326; 1981 Tax Ct. Memo LEXIS 416; 42 T.C.M. (CCH) 229; T.C.M. (RIA) 81326; June 24, 1981. *416 Held, fair market value of real property determined. Held further, remainderman's purported disclaimer invalid under Virginia law. Marital deduction denied because the interest which passed to decedent's surviving spouse was a terminable interest under section 2056(b). George M. Hankins, pro se. Ronald P. Campbell, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: By letter dated April 18, 1978 respondent has determined a Federal estate tax deficiency of $ 18,881.98. The issues for our decision *417 are the fair market value of the decedent's farm and whether petitioner is entitled to a deduction under section 2056(a)[1] for the value of the farm. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. William Edwin Hankins died on August 4, 1974. George M. Hankins, decedent's son, is the executor of the estate of William Edwin Hankins. George M. Hankins was a resident of Virginia Beach, Virginia when the petition was filed herein. The Federal estate tax return (Form 706) for the estate of William Edwin Hankins was filed on May 2, 1975 with the Internal Revenue Service Center in Memphis, Tennessee. The decedent was survived by his wife, Ruth Hankins (hereinafter Ruth) and his son George M. Hankins (hereinafter George). At his death decedent owned a parcel of land located near Toano, Virginia and known as Marl Brook Farm (hereinafter Marl Brook). Marl Brook consisted of approximately 195 acres *418 and served as decedent's and Ruth's residence. Approximately 127 acres of Marl Brook could be utilized as productive farm land. Marl Brook was not farmed by decedent and Ruth but portions of it were leased to persons engaged in farming. In 1970 the Commonwealth of Virginia passed enabling legislation which allowed counties, cities and towns to assess and tax certain types of real property solely upon the basis of their value for limited uses, such as for agricultural or horticultural purposes. [2] The purpose of this legislation was to encourage the preservation and proper use of these types of real property and to deter their conversion into more intensive uses, such as development for residential use, by alleviating the property tax burden. Va. Code Ann., sec. 58-769.4. This scheme of property taxation is known as "land use assessment." In 1974 James City County, the local taxing authority within which Marl Brook is located, enacted an ordinance which implemented land use assessment solely for land used for agricultural purposes. Marl Brook qualified for the special assessment under James City County's land use assessment *419 ordinance. During 1974 Marl Brook's value was appraised by James City County[3] as $ 227,940, which consisted of $ 202,540 for land and $ 25,400 for buildings. This value was reached by reference to recent arm's length sales of comparable properties and also by the cost method, i.e. the cost to replace all improvements, less accumulated depreciation thereon, plus the value of the land. This valuation was effective January 1, 1975. At George's request the valuation of $ 227,940 was reviewed by Rudolph Johnston (hereinafter Johnston), who was employed by James City County in December 1974 as Assessor of Real Estate. After a review of the original appraisal Johnston reduced Marl Brook's appraisal value to $ 191,570, which consisted of $ 166,170 for land and $ 25,400 for buildings. During 1974 James City County assessed real property at 30 percent of its appraisal value. On the Federal estate tax return petitioner reported Marl Brook's value as $ *420 63,900. This value was based on an alleged assessed value of Marl Brook by James City County of $ 19,170. [4] In the statutory notice of deficiency respondent valued Marl Brook at $ 117,000. In his will decedent provided as follows: ITEM THREE
I give and devise to my said wife, Ruth Hankins, all real estate which I may own at the time of my death, the same to be hers so long as she shall live, together with all rents and profits therefrom. * * * If my sais wife should predecease me, and in any event upon her death, I give and devise to my said son, George M. Hankins, to be his in fee simple, all of said real estate except as provided in Item Four, hereof. Item Four of decedent's will disposed of decedent's one-fourth interest in a parcel of realty other than Marl Brook. In order to lessen the tax burden on the estate, George decided to disclaim his remainder interest in Marl Brook. George was advised by a clerk of a *421 local court that to do so would require the filing of a written disclaimer which should be done at the same time that the deed was recorded transferring Marl Brook from the estate to Ruth. George was also cautioned that he should not distribute any of the estate's assets until all debts were satisfied. Thus, George decided to delay the filing of a written disclaimer until petitioner's debts were satisfied. To this end, on April 11, 1975 George wrote the following letter to Ruth: April 11, 1975 Dear Mom, I am in the process of collecting all of the data necessary to file the estate tax forms (Federal) and the inheritance tax forms (State), which will have to be done by the first of the month. It is my intention, in accordance with our discussions, to file the forms showing the home place [Marl Brook] going to you. In order to do this it will necessitate my filing a statement with the clerk of the court when I go to transfer the deed. I am advised not to make any distribution from the estate until I have cleared all taxes and the commissioner of accounts is notified. So consider yourself officially notified that you will own, not have a life right in Marlbrook [sic]. *422 I will also notify the children. Love, George At this time of trial, George had not filed a written disclaimer of his interest in Marl Brook with the Circuit Court for James City County, Virginia, where decedent's estate is being administered. On the estate tax return petitioner claimed a marital deduction under section 2056 for Marl Brook. In the statutory notice of deficiency respondent disallowed in full petitioner's claimed marital deduction for Marl Brook. OPINION The first issue for our decision is the date of death value of Marl Brook Farm. Section 2031 provides that the value of the decedent's gross estate shall be determined by including the value at the date of his death of all real or personal property. Section 20.2031-1(b), Estate Tax Regs; states that: The value of every item of property includible in a decedent's gross estate * * * is its fair market value at the time of the decedent's death * * *. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to *423 buy or to sell and both having reasonable knowledge of relevant facts. * * * The determination of the date of death fair market value of a particular piece of property is a question of fact. Estate of Fawcett v. Commissioner, 64 T.C. 889, 898 (1975). Petitioner bears the burden of proving that respondent's determination is incorrect. Rule 142(a), Tax Court Rules of Practice and Procedure.
The record pertaining to this issue is very scanty. Petitioner claimed a value of $ 63,900 for Marl Brook on the Federal estate tax return, based upon an alleged local property tax assessment value of $ 19,170 and the local practice of assessing realty at 30 percent of its appraised value. However, petitioner did not introduce into evidence the James City County assessment upon which the estate tax valuation was based, nor would such assessment be relevant to Marl Brook's estate tax value without some evidence that the local assessment represented the property's fair market value, section 20.2031-1(b), Estate Tax Regs. Respondent's expert, Johnston, could only testify as to the property tax appraisal of Marl Brook which was effective January 1, 1975. He had no knowledge *424 of the appraisal method of James City County prior to his retention by that county in December of 1974. [5] Nor did petitioner introduce any evidence of the county's appraisal methods, upon which the 30 percent assessment and value was made. In an attempt to support the claimed value of Marl Brook, petitioner introduced evidence of Marl Brook's value by use of the special valuation provisions of section 2032A and, more particularly, the formula for valuing farm land provided by section 2032A(e)(7)(A). [6] Basically, the dispute between petitioner and respondent centers upon whether Marl Brook's fair market value must reflect its "highest and best use," as respondent contends, or only its "actual use," as petitioner argues. *425 Section 2032A was enacted by the Tax Reform Act of 1976, sec. 2003(a); Pub. L. 94-555; 90 Stat. 1856. The purpose behind section 2032A is quite similar to that which motivated the enactment of land use assessment statutes by Virginia and other states: to encourage particular uses of certain types of property by reducing the tax burden upon such property. H. Rept. No. 94-1380, 94th Cong. 2nd Sess. (1976), 1976-3 C.B. (Vol. 3) 755, 756; S. Rept. No. 94-938, Part 2, 94th Cong., 2nd Sess. (1976), 1976-3 C.B. (Vol. 3) 657. If certain conditions are met then section 2032A allows an estate's representative to value "qualified real property" (including certain farm realty), for estate tax purposes, under the special formula of section 2032A(e)(7). This formula provides what is basically an income-capitalization method of valuation. Section 2032A is available only to the estates of decedents who died after December 31, 1976. Tax Reform Act of 1976; sec. 2003(e), Pub. L. 94-455; 90 Stat. 1862. Respondent's contention that property must be valued on its highest and best use is based upon the following language from H. Rept. No. 94-1380, supra, 1976-3 C.B. (Vol. 3) 755: *426 Under present law, the value of property included in the gross estate of a decedent is the fair market value of the property interest at the date of the decedent's death (or at the alternate valuation date if elected). The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts. One of the most important factors used in determining fair market value is the highest and best use to which the property can be put. Where the fair market value of real property is the subject of dispute, there are several valuation techniques which the courts tend to accept. These methods include the income-capitalization technique, the reproduction-cost minus depreciation technique, and the comparative sales technique. Courts will generally use one of these methods, or a combination of these methods, in determining fair market value. However, in all cases, it is presumed that land would change hands between a willing buyer and a willing seller based on the "highest and best use" to which that land could be put, rather than the *427 actual use of the land at the time it is transferred. While the capitalization method used by petitioner is a recognized valuation tool, Estate of Tarver v. Commissioner, 26 T.C. 490 (1956), affd. in part, revd. in part, 255 F.2d 913 (4th Cir. 1958), it is by no means an exclusive method of valuation. See e.g. Estate of Fitts v. Commissioner, 237 F.2d 729, 731 (8th Cir. 1956) (substantially contemporaneous sales of similar properties best indication of value of unlisted corporate stock). Respondent's statement of the law of valuation, absent a special valuation provision like section 2032A, is correct. The highest and best use of property is the method to be employed, not merely the actual use of the property to be valued. Petitioner's argument that he has only employed the method of valuation which Congress mandated is wide of the mark. First, section 2032A is elective and absent the election required therein cannot be used. Section 2032A(a)(1)(B) and 2032A(d). Second, section 2032A is only available for the estate of decedents *428 dying after December 31, 1976, and decedent died in 1974. Based on the record herein, we hold that the fair market value of Marl Brook, as of August 4, 1974, was $ 117,000. The second issue is whether Marl Brook qualified for the marital deduction pursuant to section 2056. Petitioner argues that George's letter to Ruth served as a disclaimer of George's remainder interest, thus making Ruth the owner of Marl Brook in fee simple and qualifying Marl Brook for the marital deduction. Respondent maintains that George's letter did not work a disclaimer, that Ruth therefor owned only a life estate or "terminable interest" in Marl Brook and thus no marital deduction is allowable for Marl Brook. Section 2056(a) allows as a deduction from the gross estate the value (with limitations not here relevant) of any interest in property which passes from the decedent to his or her survving spouse. However, section 2056(b)(1)[7] provides an exception to the marital deduction of section 2056(a) in the case of a "terminable interest." Petitioner and respondent agree that Ruth's life estate in Marl Brook *429 is a terminable interest as defined in section 2056(b)(1). See sections 20.2056(b)-1(b) and 20.2056(b)-1(g), Example (1), Estate Tax Regs. Petitioner asserts, however, that George's letter to Ruth worked a disclaimer of George's remainder in Marl Brook which, by reason of the operation of the real property doctrine of "merger," transmuted Ruth's interest in Marl Brook *430 from a nondeductible life estate into a deductible fee interest. [8] Respondent maintains that the letter in question was not an effective disclaimer under Virginia law and thus Ruth possessed only a life estate in Marl Brook. We agree with respondent. Section 2056(d)(2), as in effect during 1975, provided as follows: (2) By any other person.--If under this section an interest would, in the absence of a disclaimer by any person other than the surviving spouse, be considered as passing from the decedent to such person, and if a disclaimer of such interest is made by such person and as a result of such disclaimer the surviving spouse is entitled to receive such interest, then-- *431 (A) if the disclaimer of such interest is made by such person before the date prescribed for the filing of the estate tax return and if such person does not accept such interest before making the disclaimer, such interest shall, for purposes of this section, be considered as passing from the decedent to the surviving spouse, and (B) if subparagraph (A) does not apply, such interest shall, for purposes of this section, be considered as passing, not to the surviving spouse, but to the person who made the disclaimer, in the same manner as if the disclaimer had not been made. In order for a disclaimer to qualify under section 2056(d)(2) the conditions of applicable state law must be satisfied. Estate of Caswell v. Commissioner, 62 T.C. 51, 55-56 (1974). [9]
*432 Under Virginia law a beneficiary under a testamentary instrument may disclaim in whole or in part his succession to property by executing a written instrument. Va. Code Ann., sec. 64.1-188. The disclaimer instrumnt must be filed within 10 months of the decedent's death with the Virginia court in which the estate is administered. Va. Code Ann., sec. 64.1-189. Petitioner admits that he has never filed a written disclaimer instrument with the Circuit Court of James City County, where the estate is being administered. Thus, the letter is clearly not a disclaimer under Virginia law. Petitioner asserts, however, that he has satisfied the spirit of section 2506(d)(2). However, petitioner must fulfill the literal requirements of the statute for deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). While it is unfortunate that petitioner relied upon the advice of a local court official in delaying the execution of a disclaimer, such reliance does not serve to vitiate the requirements of the Internal Revenue Code. Because *433 petitioner did not effectively disclaim his interest in Marl Brook we must sustain respondent's determination. Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. Va. Code Ann., sec. 58-769.4↩, et. seq.
3. During 1974, James City County was assisted in making appraisals by the Appraisal Division of the Commonwealth's Department of Taxation. Two employees of the Department of Taxation made Marl Brook's original appraisal.↩
4. The 1974 county appraisal card lists the assessed value of Marl Brook as $ 57,471. (Respondent's Exhibit E). The record does not disclose why petitioner used an assessed value of $ 19,170 in computing the fair market value of the property.↩
5. See Estate of Adams v. Commissioner, T.C. Memo. 1973-113↩.
6. SEC. 2032A. VALUATION OF CERTAIN FARM, ETC., REAL PROPERTY. (a) Value Based on Use Under Which Property Qulaifies.-- (1) General rule.--If (A) the decedent was (at the time of his death) a citizen or resident of the United States, and (B) the executor elects the application of this section and files the agreement referred to in subsection (d)(2), then, for purposes of this chapter, the value of qualified real property shall be its value for the use under which it qualifies, under subsection (b), as qualified real property. (e) Definitions; Special Rules.--For purposes of this section-- (7) Method of valuing farms.-- (A) In general.--Except as provided in subparagraph (B), the value of a farm for farming purposes shall be determined by dividing-- (i) the excess of the average annual gross cash rental for comparable land used for farming purposes and located in the locality of such farm over the average annual State and local real estate taxes for such comparable land, by (ii) the average annual effective interest rate for all new Federal Land Bank loans. For purposes of the preceding sentence, each average annual computation shall be made on the basis of the 5 most recent calendar years ending before the date of the decedent's death. (B) Exception.--The formula provided by subparagraph (A) shall not be used-- (i) where it is established that there is no comparable land from which the average annual gross cash rental may be determined, or (ii) where the executor elects to have the value of the farm for farming purposes determined under paragraph (8).↩
7. (b) Limitation in the Case of Life Estate or Other Terminable Interest.-- (1) General rule.--Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be alloed under this section with respect to such interest-- (A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and (B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;↩
8. As a general rule of law, when a greater and a lesser estate meet in the same person, the lesser is merged with the greater. 28 Am. Jur. 2d 580 (1966). Acordingly, had Ruth, holder of the life estate, acquired the remainder in Marl Brook, the life estate would have merged with the remainder creating a nonterminable interest. Rowley v. American Trust Co., 144 Va. 375, 132 S.E. 347↩ (1926).
9. Section 2056(d)↩ was repealed by the Tax Reform Act of 1976; sec. 2009 (b) (4) (D); Pub. L. 94-55; 90 Stat. 1896. For purposes of the estate and gift taxes, disclaimers must now qualify under the provisions of section 2518, eliminating the need to resort to the various state laws. Joint Committee on Internal Revenue Taxation, 94th Cong. 2nd Sess. General Explanation of the Tax Reform Act of 1976, 1976-3 C.B. (Vol. 2) 601-603.