## Richmond

### Grace Walker Schmucker

### v.

### Pealage P. Walker, IV, et al.

Record No. 810697.

January 20, 1984.

Present: All the Justices.

*Jerome B. Friedman (Pender & Coward*, on briefs), for appellant.
*Stanley G. Bryan (Bryan and Zydron*, on brief), for appellees.

STEPHENSON, J., delivered the opinion of the Court.

In this appeal, we consider a court's authority to dissolve a testamentary trust before the time of termination expressed in the will.

Appellant, Grace Walker Schmucker, is the trustee of a testamentary trust created by her mother, Elizabeth Sawyer Walker. The appellees,* grandchildren of the testatrix, are the remaindermen-beneficiaries of the trust. They filed a bill for declaratory judgment alleging that the purpose of the trust had been accomplished and praying that the trust be terminated and the trust property delivered to them. In her answer, the trustee denied that the trust's purpose had been accomplished and asserted that the powers granted to her by the will should continue until the trust is terminated according to the testatrix's expressed intention.

Following an *ore tenus* hearing, the trial court decreed that the trust be terminated because the trustee "has no further interest, right or responsibility pertaining to the trust property." The de-

---

*The appellees are Pealage P. Walker, IV, Wesley F. Walker, James M. Walker, Rae W. Cox, and Lenore E. Walker.

cree enjoined the trustee from selling the property and vested fee simple ownership thereof in the appellees. The trustee appeals from this decree.

The clause of the will pertinent to this appeal provides:

> I give, devise and bequeath my property situate at number 3006 McLemore Street in the City of Norfolk, Virginia, together with all improvements thereon, to Grace Walker Schmucker, as Trustee. Said Trustee shall hold said property for the use and benefit of my son, Pealage P. Walker, for and during his lifetime, and upon his death, for the use and benefit of his widow, Edith Lenore Walker, should she be then surviving, until her death or until she should remarry, whichever shall first occur, and upon the death of Pealage P. Walker and the death or remarriage of Edith Lenore Walker, I give and devise this property to their children or the issue of any deceased children, per stirpes, in fee simple. This property, in the sole judgment of my Trustee during the term of any trust, may be sold and disposed of by her in accordance with the general power of sale contained in this my Will.

The will also gives the trustee "full discretionary powers of management" of the trust. These include collecting rents, paying proper costs and expenses, selling trust property, and holding and reinvesting the proceeds "until [they are] finally delivered and distributed" according to the terms of the will.

The testatrix died January 6, 1967. Pealage P. Walker, one of the life beneficiaries, died October 17, 1977. His wife, Edith, the other life beneficiary, continued to live on the property until she moved in April, 1979. In April, 1980, Edith conveyed her interest in the property to the appellees, the remaindermen-beneficiaries of the trust, but the trustee did not join in this conveyance. Edith is still alive and has not remarried.

After Edith moved, the trustee decided to sell the property and to hold and invest the proceeds for Edith's benefit. The appellees initially agreed to a sale, but, after the trustee executed a contract agreeing to sell the property, they changed their minds. Thereafter, they instituted this suit and filed a memorandum of *lis pendens* (Code § 8.01-268) against the property.

While Pealage and Edith lived on the property, they, rather than the trustee, paid the taxes and insurance. The trustee testified, however, that she did not exercise these powers while her brother and his wife occupied the property because she "did not wish to interfere with them." The trustee further testified that she had "nothing to gain financially" by contesting this suit, "but she only wants her deceased mother's wishes and intentions followed."

The appellees contend that since all the beneficiaries are sui juris, they can demand delivery of the trust property and thereby terminate the trust. They rely in the main on *Rowley* v. *American Trust Co.*, 144 Va. 375, 132 S.E. 347 (1926), and *Thom* v. *Thom*, 95 Va. 413, 28 S.E. 583 (1897). The trustee, on the other hand, largely relying upon *Telephones, Inc.* v. *LaPrade*, 206 Va. 388, 143 S.E.2d 853 (1965), contends that a voluntary termination of the trust by the beneficiaries runs counter to the testatrix's intention.

We have recognized "that, generally, if all the beneficiaries of a trust are sui juris and all concur in a demand for delivery in kind of the trust assets, the trustees are obligated to make such delivery and thereby terminate the trust." *LaPrade* at 397, 143 S.E.2d at 859. However, when "no considerations of public policy are involved, and the trust is active, rather than passive," the foregoing rule must yield to the principle that when a settlor expresses a clear intention that the beneficiaries shall not terminate the trust by compelling delivery, the courts must uphold the settlor's expressed intention. *Id*. This principle of law is especially true when "the [trustee is] vested with broad discretionary powers. . . ." *Id*.

Applying these principles, we conclude that the trial court erred in terminating the trust. It is apparent that the testatrix intended that the trustee exercise her powers until Edith, the second life beneficiary, either died or remarried. Indeed, the will expressly provides that "[t]his property, *in the sole judgment of my trustee during the term of any trust*, may be sold and disposed of by her in accordance with the general power of sale contained in this my Will." (Emphasis added.) The will also gives the trustee "full discretionary powers" to sell the property, to reinvest the proceeds of sale, and to manage the trust. This language compares favorably with the "absolute discretion" given to the trustees in *LaPrade. Id*. at 398, 143 S.E.2d at 859.

■ Obviously, the testatrix intended the trust to be active rather than passive. In a passive trust, the trustee has no active duty to perform but is merely the receptacle of the legal title. G. Bogert, *The Law of Trusts and Trustees*, § 207 (2d ed. 1979 and Supp. 1982).

■ There is another compelling reason for rejecting the beneficiaries' attempt to terminate the trust. The will states that upon "the death or remarriage of Edith" the property passes to the children of Pealage and Edith "or the issue of any deceased children per stirpes, in fee simple." Therefore, until the event occurs which will terminate the trust (Edith's death or remarriage), it is not possible to ascertain precisely who will be in the class of remaindermen contemplated by the testatrix. For example, should one of Edith's children die leaving issue before Edith either died or remarried, the class of beneficiaries would open for such issue. Consequently, a premature termination of the trust by the beneficiaries could abridge the rights of undetermined parties. *See Roberts* v. *Scyphers*, 128 Va. 85, 104 S.E. 698 (1920).

*Rowley* and *Thom*, relied upon by the appellees, are readily distinguishable. In neither case did the trustee have the broad discretionary powers found in *LaPrade* and the present case. Moreover, both the *Rowley* and *Thom* trusts clearly named all the beneficiaries, and, unlike the present case, there was no possibility of the class of beneficiaries changing after the settlor's death.

For these reasons, we will reverse the judgment of the trial court and enter final judgment for the trustee.

*Reversed and final judgment.*